## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| DILLON BAUMEISTER, SCOTT FLUEGGE, NELSON AVILES, individually and on behalf of all others similarly situated, )<br><br>Plaintiffs, )<br><br>v. )<br><br>ATKORE, INC.; CANTEX INC.; DIAMOND PLASTICS CORPORATION; IPEX USA LLC; PIPELIFE JETSTREAM, INC.; J-M MANUFACTURING COMPANY, INC. D/B/A JM EAGLE; NATIONAL PIPE & PLASTICS, INC.; NORTHERN PIPE PRODUCTS, INC.; OTTER TAIL CORPORATION; PRIME CONDUIT, INC.; SANDERSON PIPE CORPORATION; SOUTHERN PIPE, INC.; WESTLAKE CORPORATION; WESTLAKE PIPE & FITTINGS CORPORATION; VINYLTECH CORPORATION and OIL PRICE INFORMATION SERVICE, LLC,<br><br>Defendants. ) | Case No.<br><br>CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

## I. INTRODUCTION

1.     Plaintiffs' claims arise from Defendants' conspiracy to fix prices and overcharge Plaintiffs and the Classes for PVC Pipe of all applications ("PVC Pipes"). Plaintiffs bring this civil antitrust action on behalf of themselves and the proposed Classes consisting of all persons or entities who purchased, for end use, PVC Pipe manufactured by a Defendant and sold through a reseller or distributor in the United States between January 1, 2021 and the present (the "Class Period").

2.     The manufacturers of PVC Pipe are called converters. The Converter Defendants in this case are the leading manufacturers of PVC Pipe in the United States: Atkore, Inc.; Cantex, Inc.; Diamond Plastics Corporation; IPEX USA LLC; PipeLife Jetstream, Inc.; J-M Manufacturing

Company, Inc. d/b/a JM Eagle; National Pipe & Plastics, Inc.; Northern Pipe Products, Inc.; Otter Tail Corporation; Prime Conduit, Inc.; Sanderson Pipe Corporation; Southern Pipe, Inc.; Westlake Corporation; Westlake Pipe & Fittings Corporation; and Vinyltech Corporation. The Converter Defendants control approximately 90% of the PVC Pipe municipal water application category and approximately 95% of the PVC electrical conduit application category in the United States.

3.     During the Class Period, Plaintiffs allege that Defendants and their Co-conspirators, conspired and combined to fix, raise, maintain, and stabilize the price of PVC Pipe in the United States. Defendants did so by communicating through an information-exchange firm called Oil Price Information Service, LLC ("OPIS"), which enabled the Defendants to discuss and signal their pricing activities, gain access to standardized pricing data from their competitors, and collectively extract artificially inflated profits from their customers. OPIS went far beyond just facilitating the private and non-public sharing of information: OPIS served again and again as a conduit between the Converter Defendants, allowing them to communicate their intentions on pricing in furtherance of their antitrust conspiracy.

4.     Defendants' anticompetitive actions widened the spread between the price that the Converter Defendants pay to manufacture PVC Pipe and the price at which they sold PVC Pipes, damaging Plaintiffs and the Classes.

5.     While the purchases made by Plaintiffs and members of the proposed Classes were for end use, their claims may be considered indirect claims or direct claims depending on the Court's eventual finding, after discovery, regarding the distributors' involvement in the conspiracy. Therefore, Plaintiffs bring this action on behalf of a nationwide class of end users who purchased from co-conspirator non-converter resellers and thus have direct purchaser claims against Defendants for damages and injunctive relief under Section 1 of the Sherman Act. Plaintiffs also

bring this action on behalf of statewide classes with indirect purchaser claims against Defendants under various state antitrust, consumer protection, and unjust enrichment laws for damages and injunctive. Plaintiffs demand a trial by jury.

## II. JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this is a class action involving common questions of law or fact in which the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs; there are more than 100 members of the class; and at least one member of the class is a citizen of a state different from that of one Defendants.

7.      In the alternative, this Court has jurisdiction over this action pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26 and Section 1 of the Sherman Antitrust Act, 15 U.S.C. §§ 1, 3. Plaintiffs request declaratory and injunctive relief for injuries sustained by Plaintiffs and the Class resulting from Defendants' conspiracy. Therefore, this Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1337(a). The Court possesses supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

8.      Venue is proper in this District pursuant to Sections 4 and 12 of the Clayton Act, 15 U.S.C. §§ 15 and 22, and pursuant to 28 U.S.C. §§ 1391 (b) and (c), because Defendants, through their owned or controlled subsidiaries and affiliates, transacted business in this District; sold the products or services at issue in this District; had substantial contacts with this District; and engaged in anticompetitive conduct that was directed at and had a foreseeable, direct, and intended effect of causing injury to the business or property of persons residing in, located in, or doing business in this District.

9.      This Court also has personal jurisdiction over each Defendant because, *inter alia*, each Defendant: (a) transacted business throughout the United States, including in this District; (b) has

manufactured, sold, shipped, and/or delivered substantial quantities of PVC Pipe throughout the United States, including this District; (c) has substantial contacts with the United States, including this District; and/or (d) engaged in an antitrust conspiracy that was directed at and had a direct, foreseeable, and intended effect of causing injury to the business or property of persons residing in, located in, or doing business throughout the United States, including in this District.

10.     The activities of the Defendants and all co-conspirators, as described herein, were within the flow of, were intended to, and did have direct, substantial, and reasonably foreseeable effects on the interstate commerce of the United States.

### III.  PARTIES

11.     Plaintiffs Dillon Baumeister is a citizen of the State of Iowa and resides in Pleasant Hill, Iowa. Mr. Baumeister purchased PVC Pipe manufactured by one or more Defendants or their Co-Conspirators, including J.M. Eagle and Cantex in June 2023, for end use and was overcharged as a result of the Defendants' actions described herein.

12.     Plaintiffs Nelson Aviles is a citizen of the State of Illinois and resides in Chicago, Illinois. Mr. Aviles purchased PVC Pipe manufactured by one or more Defendants or their Co-Conspirators, including J.M. Eagle in 2023, for end use and was overcharged as a result of the Defendants' actions described herein.

13.     Plaintiffs Scott Fluegge is citizen of the State of Michigan and resides in Troy, Michigan. Mr. Fluegge purchased PVC Pipe manufactured by one or more Defendants or their Co-Conspirators, including Cantex, for end use and was overcharged as a result of the Defendants' actions described herein.

14.     Defendant Atkore, Inc. ("Atkore") is a publicly traded Delaware corporation headquartered in Harvey, Illinois. During the Class Period, Atkore and/or its predecessors, wholly

owned or controlled subsidiaries, or affiliates sold PVC Pipe in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States.

15.     Defendant Cantex Inc. ("Cantex") is a Delaware corporation headquartered in Fort Worth, TX. Cantex is jointly owned by Mitsubishi Corporation ("Mitsubishi") and Shin-Etsu Chemical Co. Ltd. ("Shin-Etsu"). During the Class Period, Cantex and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold PVC Pipe in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States.

16.     Defendant Diamond Plastics Corporation ("Diamond Plastics") is a Delaware corporation headquartered in Grand Island, NE. During the Class Period, Atkore and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold PVC Pipe in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States. During the Class Period, Diamond Plastics and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold PVC Pipe in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States.

17.     Defendant IPEX USA LLC ("IPEX") is a Delaware company headquartered in Pineville, NC. It is a wholly owned subsidiary of Aliaxis SA, a Belgian corporation. During the Class Period, IPEX and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold PVC Pipe in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States.

18.     Defendant J-M Manufacturing, Inc. d/b/a JM Eagle ("JM Eagle") is a California corporation headquartered in Los Angeles, CA. During the Class Period, JM Eagle and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold PVC Pipe in interstate

commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States.

19.     Defendant National Pipe and Plastics, Inc. ("National Pipe") is a Delaware corporation headquartered in Endicott, NY. It is a wholly owned subsidiary of CRH PLC, an Irish public limited company. During the Class Period, National Pipe and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold PVC Pipe in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States.

20.     Defendant Northern Pipe Products, Inc. ("Northern Pipe") is a North Dakota corporation. It is a wholly owned subsidiary of Otter Tail and located in Fargo, ND. Along with Defendant Vinyltech, it comprises Otter Tail's plastics segment. During the Class Period, Northern Pipe and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold PVC Pipe in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States.

21.     Defendant Oil Price Information Service LLC ("OPIS") is a Maryland corporation headquartered in Rockville, MD. It is a wholly owned subsidiary of News Corp. Throughout the Class Period, OPIS conspired with the Converter Defendants by facilitating the exchange of confidential, proprietary, and competitively sensitive data among Defendants and their Co-conspirators.

22.     Defendant Otter Tail Corporation ("Otter Tail") is a publicly traded Minnesota corporation headquartered in Fergus Falls, MN. During the Class Period, Otter Tail and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold PVC Pipe in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States.

23.     Defendant PipeLife Jetstream, Inc., ("PipeLife") is a privately held Delaware corporation headquartered in Siloam Springs, AR. PipeLife is the United States division of Austria-based PipeLife Group, one of the world's largest manufacturers of plastic pipe and systems. During the Class Period, PipeLife and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold PVC Pipe in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States.

24.     Defendant Prime Conduit, Inc. ("Prime Conduit") is a Delaware corporation headquartered in Cleveland, OH. Prime Conduit is jointly owned by Shin-Etsu and Mitsubishi. During the Class Period, Prime Conduit and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold PVC Pipe in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States.

25.     Defendant Sanderson Pipe Corporation ("Sanderson") is a privately held Delaware corporation headquartered in Clarksville, TN. Sanderson is jointly owned by Mitsubishi and Shin-Etsu. During the Class Period, Sanderson and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold PVC Pipe in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States.

26.     Defendant Southern Pipe, Inc. ("Southern Pipe") is a Delaware corporation headquartered in New London, NC. Southern Pipe is jointly owned by Mitsubishi and Shin-Etsu. During the Class Period, Southern Pipe and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold PVC Pipe in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States.

27.     Defendant Vinyltech Corporation ("Vinyltech") is an Arizona corporation. It is a wholly owned subsidiary of Otter Tail and located in Phoenix, AZ. Along with Northern Pipe, it

comprises Otter Tail's plastics segment. During the Class Period, Vinyltech sold PVC Pipe in interstate commerce directly or through its wholly owned or controlled affiliates, to purchasers in the United States.

28.    Defendant Westlake Corporation ("Westlake") is a publicly traded Delaware corporation headquartered in Houston, TX. During the Class Period, Westlake and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold PVC Pipe in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States.

29.    Defendant Westlake Pipe & Fittings Corporation ("Westlake Pipe & Fittings") is a Delaware corporation headquartered in Houston, TX. It is a wholly owned subsidiary of Westlake Corporation. Westlake Pipe & Fittings Corporation was known as "NAPCO Pipe & Fittings" prior to May 2022. Prior to 2019, Westlake Pipe & Fittings was known as "North American Pipe Corporation" ("NAPCO")." During the Class Period, Westlake Pipe & Fittings Corporation and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold PVC Pipe in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States. Defendant Westlake Pipe & Fittings Corporation, and its predecessor NAPCO Pipe & Fittings, are collectively called "Defendant Westlake Pipe & Fittings."

30.    Defendants Otter Tail Corporation, Northern Pipe Products, Inc., and Vinyltech Corporation are referred to collectively as "the Otter Tail Defendants." Defendants Westlake Corporation and Westlake Pipe & Fittings, and their predecessors are referred to collectively as "the Westlake Defendants." Defendants Cantex, Diamond Plastics, Sanderson, and Southern Pipe are referred to collectively as "the Mitsubishi/Shin-Etsu Defendants."

## IV. AGENTS AND CO-CONSPIRATORS

31.     Core & Main, Inc. ("Core & Main") is a publicly traded corporation headquartered in St. Louis, MO. It is a wholesale distributor of municipal pipes. During the Class Period, C&M and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold PVC Pipe in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States. Core & Main is the largest distributor of PVC municipal water pipes in the United States.

32.     Ferguson Enterprises, Inc. ("Ferguson") is a publicly traded Virginia corporation headquartered in Newport News, VA. During the Class Period, Ferguson and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold PVC Pipe in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States. Ferguson is one of the largest distributors of PVC municipal water pipes in the United States.

33.     Fortiline Waterworks ("Fortiline") is a North Carolina corporation headquartered in Concord, NC. It is a wholly owned subsidiary of MORSCO, Inc. During the Class Period, Fortiline and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold PVC Pipe in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States. Fortiline is one of the largest distributors of PVC municipal water pipes in the United States.

34.     Various other persons, firms and corporations not named as Defendants have participated as Co-Conspirators with Defendants and have performed acts and made statements in furtherance of the conspiracy. Defendants are jointly and severally liable for the acts of their Co-Conspirators whether or not the Co-Conspirators are named as Defendants in this Complaint.

## V. FACTS

### A. Background on PVC Pipes

35. PVC is an acronym for polyvinyl chloride, which is a polymer of plastic. Considered commodity products, PVC Pipe is comprised of tubular sections or hollow cylinders made from PVC. In the United States, the manufacturing of PVC Pipe is highly regulated by industry standards that have been in place for many years, leading to limited product differentiation. The technology and processes for manufacturing PVC Pipe are well-established. The demand for PVC Pipe is relatively stable due to the prevalence of construction projects and infrastructure maintenance in the United States.

36. There are three main types of PVC Pipe (1) PVC municipal pipe, which includes PVC municipal drinking water pipe and PVC municipal sewer pipe, (2) PVC plumbing or Drain, Waste, Vent pipe, and (3) electrical conduit pipe.

37. The largest category of application for PVC Pipe is municipal water pipe, which is a commodity product. Municipal water pipes carry the municipal, potable (i.e., drinking) water supply from reservoirs, lakes, or rivers to treatment facilities and from there to water mains that distribute water throughout the community. PVC Pipe is also used in wastewater collection systems. PVC Pipe is engineered and tested to withstand high internal and external pressures and to provide an assurance of safety and longevity once installed.

38. PVC plumbing pipe, or Drain, Waste, Vent ("DWV") pipe, is typically used for potable water systems, irrigation, and drainage.

39. PVC electrical conduit pipe is used to insulate and protect wires, typically electrical wires. PVC electrical conduit pipes are resistant to burning, corrosion, moisture, and sunlight, making it appropriate for outdoor applications. It is also typically lighter than its common alternatives. For example, PVC conduit pipe is one-fifth the weight of steel and half the weight of

aluminum. Further, as the FTC previously found, "the cost disparity between PVC and steel in electrical conduit is so great that PVC electrical conduit will remain substantially more cost-effective than steel, even after a substantial PVC resin price increase."

40.     The relative size of end uses in the PVC market is described by a presentation by Westlake to its investors, noting that municipal water PVC pipe (blue, green, and purple pipe) is 64% of the market, plumbing and irrigation PVC pipe (white pipe) is 31%, and PVC electrical conduit pipe is 5%.

41.     In terms of revenue, the PVC Pipe market in the United States was worth approximately $12.2 billion in 2023. Of that total, municipal water pipe constituted about 64% ($7.8 billion), PVC plumbing and irrigation pipe constituted about 31% ($3.7 billion), and PVC electrical conduit pipe constituted about 5% ($611 million).

**B.     OPIS provided Defendants with the means to unlawfully fix the prices of PVC Pipes.**

42.     Defendant OPIS is a commodity pricing service enabling users to buy, sell, and hedge fuel prices, including gasoline, diesel, propane, jet fuel, coal, and petrochemicals. It claims to "uniquely price[] commodities throughout the supply chain—from the spot market to the wholesale rack or terminal market and ultimately to more than 400,000 retail locations across North America and Europe." It is mainly known for its activities in the United States.

43.     OPIS is no stranger to antitrust litigation. According to the California Attorney General, price reporting by OPIS has been used to manipulate gasoline prices in California. In 2020, the California Attorney General brought a lawsuit against two energy companies, Vitol and SK, alleging, in part, that they reported manipulated gasoline trades to OPIS—the most widely used gasoline reporting service in California—for the purpose of driving up the benchmark prices of

regular and premium gasoline in OPIS' spot market report. On July 11, 2024, California secured a $50 million settlement with Vitol and SK Energy, resolving the allegations.

44.     OPIS publishes daily prices and market trends from across the entire petrochemical chain in the United States via PetroChem Wire.  OPIS describes PetroChem Wire's reporting methodology as rigorous and consistent. PetroChem Wire performs "due diligence on every number and explains every price movement." It also has "established unique two-way relationships with players at the heat of the action." It gets "a daily inflow of prices and transactions from active traders every day, who in turn, benchmark off our numbers. Many major players don't report to anyone but [OPIS]."

45.     OPIS, via PetroChem Wire, provides a product called PVC & Pipe Weekly, which offers subscribers "access to timely information on pricing and supply/demand in the PVC pipe market." OPIS describes PVC & Pipe Weekly as a "thorough summary of the U.S. domestic and export PVC market and the only pricing source for finished PVC pipe (municipal, plumbing, and conduit)." "Based on a methodology developed with market-makers on both the buy and sell side, the valuations published in [PVC & Pipe Weekly] reflect each week's current market realities." Upon information and belief, Plaintiffs understands that most, if not all, of the Converter Defendants subscribe and contribute to the PVC & Pipe Weekly publication. OPIS does not list its subscription fees publicly. Potential subscribers must contact OPIS for pricing information.

46.     OPIS lists the categories of customers it seeks to serve with its PVC & Pipe Weekly reports. They are NGL & Petrochemical companies, PVC producers, PVC resin buyers, PVC pipe converters and distributors, traders, construction companies, and financial institutions. On information and belief, the Converter Defendants subscribed to PVC & Pipe Weekly. Few, if any, end users of PVC Pipe have access to PVC & Pipe Weekly.

47.     As its name suggests, PVC & Pipe Weekly publishes weekly PVC Pipe pricing data and converter commentary, which includes current pricing, and further, often includes specific forward-looking pricing signaling and apparent invitations to coordinate on supracompetitive pricing. Examples of this signaling and these invitations are set out in this Complaint *infra*.

48.     OPIS's PVC & Pipe Weekly publication proves the truth of the United States Supreme Court's caution that "exchanges of current price information, of course, have the greatest potential for generating anticompetitive effects."

49.     OPIS prepared weekly reports that permitted the Converter Defendants to exchange current sales information and coordinate future pricing activities. These reports, unavailable to anyone besides OPIS's paid subscribers, allowed the Converter Defendants to fix, raise, maintain, and stabilize the price of PVC Pipe in violation of antitrust laws of the United States, unfair competition laws, consumer protection laws, and unjust enrichment common laws of the several states.

50.     The information exchanged by the Converter Defendants through Defendant OPIS is exactly the type of information exchange that the U.S. Supreme Court has recognized as likely to have anticompetitive effects under a rule of reason analysis.

51.     First, the data exchanged is current and forward looking (*e.g.*, telling competitors current future pricing strategies), which courts consistently describe as the greatest potential for generating anticompetitive effects.

52.     Second, the information maintained in OPIS's reports is specific to converters, including information on prices.

53.     Third, none of OPIS's pricing information is publicly available. OPIS is a subscription service, which requires the Converter Defendants to pay fees over the Class Period to access the data

only OPIS has control over. OPIS ensured that its detailed and competitively sensitive information was available only to its subscribers. Thus, purchasers of PVC Pipe could not use OPIS's reports to negotiate lower prices. Instead, the Converter Defendants used it as a way to fix, raise, maintain, and stabilize their prices.

54.     Defendant OPIS markets its PetroChem Wire service by claiming that "[w]ith a more exact picture of transactional prices in the supply chain, you can make more profitable decisions, whether you are converting olefins or manufacturing consumer products. Build inventory before prices go up, or delay if prices are falling." OPIS was true to its word. Its PVC & Pipe Weekly reports specifically enable the Converter Defendants to coordinate their future pricing activities with the purpose of elevating prices and the effect of generating historic profit margins.

55.     Additionally, the PVC & Pipe Weekly report always includes pricing information and market intelligence for PVC resin. PVC resin is the primary raw material used in the production of PVC Pipes. PVC & Pipe Weekly essentially gives the Converter Defendants a one stop, non-public shop for obtaining information concerning--and manipulating--PVC Pipe pricing in the United States.

**C.      Defendants were motivated to implement their price fixing conspiracy.**

56.     Converters raised their prices for PVC municipal water pipes by approximately 500% between late 2019 and the middle of 2022. Similarly, converters raised their prices for PVC electrical conduit approximately 500%, from $0.63/lb. in late 2019 to $3.77/lb. in late 2021. These PVC Pipe price changes generated historic profits for the Converter Defendants, which motivated Defendants to implement and maintain their conspiracy.

57.     By the middle of 2022, the COVID-era supply chain issues plaguing the industry had normalized. By January 2023, the price of PVC resin had fallen to $0.51/lb., which is comparable to pre-COVID pricing levels. PVC resin prices have remained relatively stable since then. Defendants

and their Co-Conspirators saw this situation as an opportunity to artificially boost the increased prices they enjoyed during the COVID-era.

58.     Defendants and their Co-Conspirators took advantage of the situation. Defendants' profit margins remain extremely elevated to this day when compared to historic pricing data. For example, profit margins for Defendant Otter Tail PVC exploded to 61% in 2023 from its 14% long-term average (2013-2019) due in large part to profit from its PVC municipal water pipe business.

**D.     The COVID-19 pandemic provided Defendants with the opportunity to implement their conspiracy directly and via price signaling statements and information exchanges through OPIS.**

59.     Prior to the COVID pandemic, the prices for PVC Pipe remained relatively constant. Following supply chain disruptions due in part to COVID-19, the price of PVC resin increased from $0.43/lb. in late 2019 to $0.89/lb. in early 2022, approximately a 100% price increase. Defendants took this opportunity to significantly increase prices to their customers.

60.     Below are examples of the competitively sensitive information Converter Defendants exchanged through OPIS in furtherance of their anticompetitive agreement.

a.     On January 22, 2021, OPIS reported that "while some market participants believed that the market needed to be reset with a new price letter closer to the current price level, other[s] said that there is no reason converters can't push prices higher without a new price letter. ***The only requirement would be discipline.***" OPIS is the proverbial smoke-filled backroom that enables Defendants to implement their conspiracy. This invitation to restrain competition by coordinating future pricing actions in January 2021 coincides with the start of the dramatic increase in PVC Pipe prices.

b.     On October 28, 2022, OPIS reported that "[t]he steep drop in pipe demand makes it ***all the more remarkable that prices have remained rock solid*** at Block 440. Pipe makers give credit to distributors as they have been partners in the determination [to] not let

prices slip." The fact that the PVC Pipe market is not responding to normal supply and demand market dynamics in October 2022 indicates that Defendants had accepted the invitation to coordinate pricing actions.

c. On January 20, 2023, OPIS reported that Otter Tail's wholly owned subsidiary "Northern Pipe and IPEX indicated that ***they would follow whatever the market does***." There is no pro-competitive reason for Northern Pipe or IPEX to signal to their competitors they would follow the market. This behavior is consistent with the "discipline" needed to push prices higher, and Defendants' need to monitor fellow conspirators.

d. On January 27, 2023, OPIS reported that converters said, "they know demand will not kick in for weeks but were ***confident that they could hold prices firm as long as distributors were on the same page***." This invitation in January 2023 to distributors to coordinate future PVC Pipe pricing shows that Defendants sought to further insulate themselves from the normal supply and demand dynamics of a competitive market.

e. On February 3, 2023, OPIS reported that "***[c]onverters had rallied around a price increase*** for Feb 1 which would push municipal pipe prices up to Block 445 for immediate sales and Block 450 for quotes." This coordinated price increase occurred at a time when PVC Prices had been stable for approximately 40 weeks in a row, while PVC resin prices had fallen.

f. On February 10, 2023, OPIS reported that "while ***the increase announcements had been unanimous***, not all converters were particularly enthusiastic about the idea of trying to push for higher prices in early Feb. They said demand was still too low to support raising prices." This unanimous and disciplined increase in PVC Pipe pricing

in the face of weak demand is an example of coordinated pricing action unsupported by market conditions. There is no pro-competitive justification for such an action.

g. On February 23, 2023, OPIS reported that "***Converters spoke about working in concert with large distributors for months to keep pricing from sliding*** below Block 440 to prevent devaluing distributor inventories." Converters also "expressed some concern about whether distributors would ***return the favor and help keep prices from dropping*** . . ." Prices for PVC municipal pipes remained elevated through July 2024, showing that distributors did, in fact, "return the favor."

h. On May 26, 2023, OPIS reported that "[s]ome market participants viewed the news sheets more as an effort to stem the price erosion that has gripped the market rather than a true effort to push prices higher. With resin prices predicted to drop in May and June and demand still moribund, they said there doesn't seem to be either a demand pull or a cost push to move prices higher. On the other hand, some converters believed that as the originator of the new sheets ***Atkore needs to take a hard stand next week on new business at the higher price levels***." There is no pro-competitive reason to call on market leader Atkore to hold the line on higher price levels, while acknowledging that there is no economic reason for a price increase.

i. On March 15, 2024, OPIS reported that "***[c]ompetitors said everyone needs to start moving prices up on business written from now on***, or distributors will continue to buy hand to mouth." Shortly thereafter, on April 24, 2024, OPIS reported that PVC electrical conduit prices had moved up to $3.90/ft from the March 15 price of $3.78/ft.

j. On April 5, 2024, OPIS reported that "[t]he hope is that prices will continue to move up next week. Some competitors were still upset because a market leader took hold for

release orders at low prices [to] keep prices static through May for 10-truck orders and through Jun for 20-truck orders. ***The converter in question reported that none of the hold for release trucks were left in the Northeast, so that shouldn't be affecting prices anymore***." This discussion between competitors is another example of an invitation to restrain competition by coordinating future pricing actions. Further, there is no pro-competitive reason for Defendants to share company specific pricing.

k.  On May 3, 2024, the OPIS Newsletter reported that "[c]onverters said the ***price hikes won't work unless everyone is working together to implement them***." The reason for this is that there is no economic justification for raising prices, so disciplined, anti-competitive collective action is required.

l.  May 10, 2024, the OPIS Newsletter reported that "[c]onverters hope to push prices higher next week but ***concede that it will have to be a unanimous effort to have any chance of success***."

m.  On May 17, 2024, the OPIS Newsletter reported that larger converters were complaining about a small regional competitor holding its pricing at $360/100 ft in the East while the larger converters were trying to get prices up to a minimum of $370-375/100 ft. "The converter in question said it was not seeing higher prices from one of the market leaders, but competitors disputed that and said that market leader in question was quoting higher prices and the fact that the pricing range rose in the regions outside the East proved it." The conversation between competitors, facilitated directly by OPIS through its subscriber-only service, shows how OPIS created the proverbial smoke-filled backroom for Defendants.

n. On May 24, 2024, OPIS reported that the unanimous price increase effort from early May 2024 succeeded in driving PVC electrical conduit prices up from $3.70 on May 3 to $.80/ft on May 24.

o. On June 21, 2024, OPIS reported that "converters acknowledge they will need to try again to raise prices. This time, some said, they "need to put out prices letters with an increase of no more than 10 Blocks above the current market and *all aim for the same implementation date*. Then, if that increase is successful, to do it again." In the same report OPIS also stated converters were seeking "*a single price increase that would take prices up by about 5% over the current market level*, with another percent added to account the discount." Yet again, OPIS issued an invitation to coordinate on future pricing activities.

p. Within a week, the Converter Defendants had accepted the invitation. On June 28, 2024, one week after reporting on the consensus of converters to seek a single price increase of 5% over the current market level, the OPIS Newsletter reported that *all major converters raised prices with almost identical pricing in every region they served*. Defendant Cantex issued price sheets at $396.75/100 ft in the East region, $396.75/100 ft in the South Central region, $431.25 in the North Central region, $402.50/100 ft in the Southwest region, and $425.50/100 ft in the Northwest region. Defendants Prime, National Pipe, Southern Pipe, and IPEX followed with similar price sheets for the regions they serve. Defendant Atkore issued price sheets at $396.75/100 ft in the East and South Central regions, $431.25/100 ft in the North, and $402.50/100 ft in the Southwest.

61.     Defendants also coordinated their pricing activities through direct communication. For example, on November 4, 2022, OPIS wrote that "converters reported that recently there had been some cases of buyers fishing for a lower price by claiming that a competitor had sold to them at a lower number, ***but a phone call or two proved that this was not the case. So far, nobody has blinked***." Such instances demonstrate that Converter Defendants were using direct communication to contact one another and ensure they were each remaining disciplined on PVC pricing.

**E.     Defendants' conspiracy was successful.**

62.      In September 2023, Otter Tail made a presentation at the Sidoti Small-Cap Investor Conference regarding its PVC Pipe business, including Northern Pipe and Vinyltech's role in the PVC Pipe industry. On behalf of Northern Pipe and Vinyltech, OtterTail described the period from 2014-2017 as one of "chasing volume," in other words, competing for market share as one would expect in a competitive, commodity market. Otter Tail then characterized the period from 2017 to early 2020 as one where a few supply disruptions reset margins slightly higher. between resin and PVC Pipe prices holds, and there is still normal competition between PVC. Thereafter, Otter Tail explained that the PVC Pipe market was no longer chasing volume, but instead "competing" for margin, which is the price-fixing agreement described in this Complaint.

63.     The effect of the conspiracy can be seen by comparing the post-COVID prices for PVC municipal and electrical conduit pipes with the current prices.

64.     According to OPIS, prices for PVC municipal pipes continue to be approximately 4.7x higher than pre-COVID levels.

65.     Similar increases in PVC Pipe pricing can be found in the following pricing charts from Federal Reserve Economic Data Charts related to plastic water pipes and non-current carrying conduit.



*Figure 1 - FRED Plastic Water Pipe Pricing Analysis*



*Figure 2 - FRED Non-Current Carrying Conduit and Conduit Fittings
Pricing Analysis*

66.     According to OPIS, the COVID-era PVC resin supply chain issues plaguing the industry had normalized by late 2022. By January 2023, the price of PVC resin had fallen to $0.51/lb., which is comparable to pre-COVID pricing levels. PVC resin prices have remained relatively stable since then.

67.     SEC filings from the Converter Defendants show that the elevated prices for PVC Pipe do not correlate to strong demand for the products. For example, Defendant Otter Tail reported that its prices for PVC Pipe manufactured to municipal standards increased by 198%, but volume for

those pipes decreased by 23% from 2019-2023 cumulatively. This is not consistent with the laws of supply and demand – *i.e.*, when demand goes down, price should go down as well, absent coordination among commodity manufacturers.

68.     As a result of Defendants' unlawful conduct, Plaintiffs and the other members of the Classes paid artificially inflated prices for PVC Pipe during the Class Period. Plaintiffs and the members of the Classes would have purchased PVC Pipe for lower prices resulting from a competitive market but for Defendants' conspiracy. As such, Plaintiffs and the members of the Classes were directly injured by Defendants' unlawful conduct.

69.     PVC Pipe is the relevant product market, and the geographic market is the continental United States. The Converter Defendants possessed market power in the relevant product market during the Class Period.

**F.      Plus Factors and Economic Analysis Support the Plausibility of the Conspiracy.**

**1.    The PVC Pipe market is highly concentrated.**

70.     Market concentration is a plus factor in analyzing the plausibility of an antitrust conspiracy. The PVC Pipe industry is highly concentrated. Among the various PVC Pipe application categories, Converter Defendants have a substantial market share. The Converter Defendants control approximately 90% of the PVC Pipe municipal water application category and approximately 95% of the PVC electrical conduit application category in the United States. For the PVC Pipe market as a whole, Defendants possess a substantial majority of the market share.

**2.    The PVC Pipe industry has high barriers to entry.**

71.     The existence of high barriers to entry is one factor that makes the market susceptible to collusion. A collusive arrangement that raised product prices above competitive levels would, under basic economic principles, attract new entrants seeking to benefit from the supercompetitive

pricing. Where, however, there are significant barriers to entry, new entrants are less likely. Thus, barriers to entry help facilitate the formation and maintenance of a cartel. High barriers to entry in the PVC Pipe market exist, precluding other entrants or would-be competitors from entering the market.

72.     During the Class Period and continuing today, substantial barriers impede entry into the PVC Pipe market. A new entrant into the market would face costly and lengthy start-up costs, including multi-hundred million dollar costs associated with building production facilities.

73.     The PVC Pipe market has been subject to increasing consolidation over the last several decades. Today, just three companies—Defendants Atkore, JM Eagle, and National Pipe—produce about half the municipal conduit PVC Pipe in the United States.

### 3. PVC Pipe is largely commoditized.

74.     When a product is characterized as a commodity, market participants primarily compete based on price. Where competition occurs principally on the basis of price, it is easier to implement and monitor collusive agreements because price is more often objectively measurable than non-price factors.

75.     PVC Pipe is mass-produced through standardized manufacturing processes. They are designed to standardized technical and operational characteristics (*i.e.*, AWWA C900). There are no other defining characteristics that differentiate the Converter Defendants' PVC Pipe from each other.

76.     The Converter Defendants are aware of the interchangeability of their specific products for PVC Pipes. Indeed, the Converter Defendants include the standardized technical and operation characteristics in their respective websites, product catalogues, and/or other materials distributed to PVC Pipe purchasers.

77.     The PVC Pipe at the center of the Defendants' conspiracy is commoditized.

### 4. The demand for PVC Pipe is inelastic.

78.     Inelastic demand means that increases in price result in limited declines in quantity sold in the market. For a cartel to profit from raising prices above competitive levels, demand must be inelastic at competitive prices such that cartel members are able to raise prices without triggering a decline in sales revenue that would make the artificial price increase unprofitable. In simple terms, demand is inelastic when the loss in volume arising from a price increase is small relative to the magnitude of the increase in price, allowing higher prices to increase revenues and profits despite loss in sales.

79.     The FTC has found that pipes made from materials other than PVC are not close substitutes for PVC Pipe generally.

80.     With regard to municipal PVC water pipe specifically, the FTC found that demand is inelastic for at least two reasons. First, in many situations the choice of pipe material is based on factors other than price. These factors include the needs of a municipality for the distinctive properties of one kind of pipe over another to meet the use conditions of a particular area. Where the pipe product is selected on the basis of factors other than price, changes in the price of municipal PVC water pipe will not affect the purchase decision. Second, in a case where price is an important consideration for pipe material selection, the total installed cost of a municipal PVC water pipe system is often substantially less than that of a ductile iron or some other material. These two factors have led the FTC to consider the demand for municipal PVC water pipe to be inelastic.

### 5. Defendants had numerous opportunities to collude.

81.     An important factor for a court considering the plausibility of a price-fixing conspiracy is the existence of opportunities for competitors to meet directly with one another to facilitate a conspiracy. Through regular trade association meetings, Converter Defendants had numerous such opportunities.

82.     For instance, the Uni-Bell PVC Pipe Association ("PVCPA") is one of the most prominent PVC Pipe trade associations in the United States. It promotes the use of longer-life, lower-maintenance, corrosion-proof PVC pipe in water and wastewater systems. It includes PVC electrical conduit converters as members. Defendants Atkore, Diamond Plastics, JM Eagle, National Pipe, IPEX, Otter Trail, and Westlake—representing approximately 90% of the PVC municipal water pipe market—are regular members of PVCPA. PVCPA hosts multiple events each year, including an annual meeting. Defendants Atkore, Diamond Plastics, JM Eagle, National Pipe, IPEX, Otter Trail, and Westlake have had representation on the PVCPA board of directors during the Class Period.

83.     High-level executives from Converter Defendants regularly attend the PVCPA's Annual Conferences. For example, in 2024, at the PVCPA Annual Meeting in Costa Rica the following high-level executives attended: Jeff Sherman (Vice President and General Manager) and Michael "Mike" Deneen (VP of Sales for PVC and HDPE products) attended for Atkore; Skip Yentes (VP of Sales and Marketing) and John Britton (CEO) attended for Diamond Plastics; Travis Lutes (Management President) and Larry Gill (manager of codes and standards) attended from IPEX; Chuck Clark (Vice President of Operations) attended for JM Eagle; Matt Siegel (President) and Josh Funderburk (Head of Strategic Sourcing) attended for National Pipe; Terry Mitzel (President of Plastic Segment) and John Abbott (Senior Vice President) attended for Otter Tail; and Andre Battistin (Vice President of Pipe and Fittings), Keith Moggach (National Manager for Specification Engineering), Veso Sobot (then-Director of Corporate Affairs) attended for Westlake.

84.     During 2024, PVCPA has numerous Converter Defendant executives who sit on the Board of Directors, including Chuck Clark (JM Eagle), Andre Battistin (Westlake), John Britton

(Diamond Plastics), Matt Siegel (National Pipe), Travis Lutes (IPEX), and Jeff Sherman (Atkore). Mr. Clark is Vice Chair; Mr. Battistin is Treasurer; and Mr. Siegel is Past Chair.

85.    In 2023, Messrs. Clark, Battistin, Siegel, Lutes, and Britton sat on the PVCPA Board of Directors. Mr. Clark was Vice Chair; Mr. Battistin was Treasurer; and Mr. Siegel was Past Chair.

86.    In 2022, Messrs. Siegel, Clark, Britton, Lutes, and Battistin sat on the PVCPA Board of Directors. Mr. Siegel was Chair; Mr. Clark was Treasurer; and Mr. Britton was Past Chair.

### 6. Abnormal pricing during the Class Period demonstrates the anticompetitive effects of Defendants' conspiracy.

87.    Beginning in or around January 1, 2021, the spread between PVC Pipe prices and PVC resin reported by OPIS began to move abnormally. PVC resin is the primary input cost for PVC Pipe production. For many years prior to January 1, 2021, the spread between PVC Pipe and PVC resin had remained at a consistent level. However, around this time, the spread widened significantly and remains extremely elevated, compared to historic levels, to the present day.

88.    OPIS pricing data shows that converters raised the price of PVC municipal water pipes approximately 500% between late 2019 and mid-2022. In July 2024, OPIS reported that prices for PVC municipal water pipes remain 4.7 times higher than they were pre-May 2020.

89.    By comparison, OPIS pricing data shows that PVC resin prices increased from $0.34/lb. in late 2019 to $0.89/lb. in early 2022, before falling back to a more normal level of $0.51/lb. in January 2023.

### G. Defendants actively concealed the extent of their conspiracy, and Plaintiffs could not have discovered Defendants' anticompetitive conduct.

90.    Plaintiffs and members of the Classes had neither actual nor constructive knowledge of the facts constituting their claim for relief. Plaintiffs and members of the Classes did not discover, and could not have discovered through the exercise of reasonable diligence, the existence of the conspiracy alleged herein until shortly before filing this complaint. Defendants engaged in secret

price signaling and information exchanges that did not reveal facts that would have put Plaintiffs or the Classes on inquiry notice that there was an anticompetitive agreement to exchange information regarding PVC Pipe pricing and sales. Through the Class Period, Defendants effectively, affirmatively, and fraudulently concealed their anticompetitive agreement from Plaintiffs and members of the Classes.

## VI. RELEVANT MARKET

91.    This action alleges that the Defendants' coordinated horizontal conduct is a per se violation of the federal and state antitrust laws and consumer protection laws. In the alternative, Plaintiffs also allege that under Section 1 of the Sherman Act and the various state laws, the Defendants' agreement to unlawfully exchange competitively sensitive business information amongst PVC converters violates the rule of reason.

92.    Defendants compete in the PVC Pipe market for sales of PVC Pipe to customers; however, Defendants' agreement to exchange competitively sensitive business information through OPIS has enabled Defendants to reduce competition in the PVC Pipe market.

93.    This case concerns the sale of PVC Pipe for end-use in the United States.

94.    The relevant product market is the market for PVC Pipe, with different application categories.

95.    The relevant geographic market is the United States.

96.    As alleged above, high barriers to entry into the PVC Pipe market exist, precluding other entrants or would-be competitors from entering the market.

97.    As alleged above, the Converter Defendants and their Co-Conspirators exert significant market power in the PVC Pipe market.

98.    Competition is likely to be harmed when competitors with market power in a concentrated market, such as the market at issue here, exchange strategic business information about

current and forward-looking plans for prices. The information exchanged between Defendants was competitively sensitive and a material factor in sales negotiations with customers. When Defendants that are competing for the same customers exchange their strategic plans, comfort replaces uncertainty and reduced incentives to compete on price.

99.     The information exchange took place in non-public settings and involved the exchange of confidential, non-public information.

100.    The market for PVC Pipe is characterized by numerous attributes that mean the type of information exchange facilitated by OPIS is particularly likely to have anticompetitive effects. In particular, as alleged above, the market for PVC Pipe features few sellers, commoditized products, price-based competition, and inelastic demand.

101.    Defendants' unlawful information exchanges through OPIS were not reasonably necessary to further any procompetitive purpose.

## VII.    ANTITRUST INJURY

102.    Defendants' anticompetitive conduct had the following effects, among others:

a.      Price competition has been restrained or eliminated with respect to PVC Pipes;

b.      The prices of PVC Pipe have been fixed, raised, stabilized, or maintained at artificially inflated levels;

c.      Plaintiffs and the Classes have been deprived of free and open competition; and

d.      Plaintiffs and the Classes paid artificially inflated prices for PVC Pipes.

103.    The PVC Pipe that Plaintiffs and members of the Classes purchased were in substantially the same form as when they were initially sold by Defendants. As a result, the PVC Pipe follows a traceable physical chain from Defendants to Plaintiffs and members of the Classes,

and the overcharges on PVC Pipe can be traced from Defendants to Plaintiffs and members of the Classes.

104. As discussed in detail, as a matter of economic principle, firms must recover the short-run variable costs of production when they price their products for the market, which ultimately get passed to purchasers, Plaintiffs and members of the Classes here, in the form of higher retail prices. When demand is inelastic, as it is for PVC Pipes, the pass-through rate to end users is at or near 100 percent.

105. Consequently, while direct purchasers were the first to pay supracompetitive prices, the overcharge was passed along the distribution chain and absorbed by Plaintiffs and members of the Classes when they purchased the PVC Pipe for end use.

106. Commonly used and well-accepted economic models can be used to measure both the extent and the amount of the supracompetitive charge paid by Plaintiffs and the members of the Classes. Thus, the economic harm to Plaintiffs and the members of the Classes can be quantified.

107. The purpose of the collusive conduct of Defendants and their Co-Conspirators is to raise, fix, or maintain the price of PVC Pipe and, as a direct and foreseeable result, Plaintiffs and the members of the Classes paid supracompetitive prices for PVC Pipe during the Class Period.

108. By reason of the alleged violations of the antitrust laws, Plaintiffs and the members of the Classes have sustained injury to their businesses or property, having paid higher prices for PVC Pipe than they would have paid in the absence of Defendants' illegal contract, combination, or conspiracy and as a result have suffered damages.

109. This is an antitrust injury of the type that the antitrust laws were meant to punish and prevent.

## VIII. CLASS ACTION ALLEGATIONS

110. Plaintiffs bring this action on behalf of themselves and as a class action under Federal Rules of Civil Procedure 23(a) and (b)(2), seeking injunctive and equitable relief on behalf of the following class (the "Nationwide Class"):

> All persons or entities that, during the Class Period, purchased for end-use PVC Pipe manufactured by Defendants and sold through resellers or distributors in the United States.

111. Plaintiffs also bring this action on behalf of themselves and as a class action under Federal Rules of Civil Procedure 23(a) and 23(b)(3), seeking damages pursuant to antitrust, unfair competition, and consumer protection laws as well as common law unjust enrichment on behalf of the following class (the "Statewide Damages Class"):

> All persons or entities that, during the Class Period, purchased for end-use PVC Pipe manufactured by Defendants and sold through resellers or distributors in Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, the District of Columbia, Florida, Georgia, Hawaii, Idaho, Illinois, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, and Wyoming.

112. The Nationwide Class and Damages Class are referred to collectively as the "Classes" unless otherwise indicated. Specifically excluded from the Classes are the Defendants, their parent companies, subsidiaries and affiliates, co-conspirators, federal government entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, the Court, and persons who purchased PVC Pipe directly from Defendants.

113. **_Numerosity._** While Plaintiffs do not know the exact number of the members of the Classes, Plaintiffs believe there are thousands of members in the Classes. Joinder is therefore impracticable.

114. **_Commonality._** Common questions of law and fact exist as to all members of the Classes. This is particularly true given the nature of the Defendants' conspiracy, which was generally applicable to all the members of the Classes, thereby making appropriate relief with respect to the Classes as a whole. Such questions of law and fact common to the Classes include, but are not limited to:

    a.    Whether Defendants and their Co-conspirators engaged in a conspiracy to artificially inflate the price of PVC Pipes;

    b.    The identity of the participants in the alleged conspiracy;

    c.    The duration of the alleged conspiracy and the acts carried out by Defendants and their Co-conspirators in furtherance of the conspiracy;

    d.    Whether the alleged conspiracy violated federal antitrust laws and/or state antitrust, unfair competition, and/or consumer protection laws, as alleged in the following Claims for Relief;

    e.    Whether the Defendants unjustly enriched themselves to the detriment of the Plaintiffs and the Classes, thereby entitling Plaintiffs and Class members to disgorgement of all benefits derived by Defendants, as alleged in the following Claims for Relief;

    f.    Whether the conduct of the Defendants and their Co-conspirators, as alleged in this Complaint, caused injury to the business or property of Plaintiffs and Class members;

g.    The effect of Defendants' alleged conspiracy on the price of PVC Pipe sold in the United States during the Class Period; and

h.    The appropriate class-wide measure of damages.

115.    ***Predominance.*** These and other questions of law or fact, which are common to the members of the Classes, predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

116.    ***Typicality.*** Plaintiffs' claims are typical of the claims of Class members, and Plaintiffs will fairly and adequately protect the interests of the Classes. Plaintiffs and all Class members are similarly affected by Defendants' unlawful conduct in that they paid artificially inflated prices for PVC Pipes, resulting from price-fixing in the market for PVC Pipe by cartel members.

117.    ***Adequacy.*** Plaintiffs' claims arise out of the same common course of conduct giving rise to the claims of the other members of the Classes. Plaintiffs' interests are coincident with, and not antagonistic to, those of the other members of the Classes. Plaintiffs have retained counsel with substantial experience litigating complex antitrust class actions in a myriad of industries and courts throughout the nation.

118.    ***Superiority.*** Class action treatment is a superior method for the fair and efficient adjudication of the controversy, in that, among other things, such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that numerous individual actions would engender. The benefits of proceeding through the class mechanism, including providing injured persons or entities with a method for obtaining redress for claims that it might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in management of this class action.

119.    Moreover, the prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

120.    Plaintiffs know of no difficulty likely to be encountered in the maintenance of this action as a class action under Federal Rule of Civil Procedure 23.

## IX. CAUSES OF ACTION

### COUNT 1
**Restraint of Trade in Violation of the Sherman Act 15 U.S.C. § 1**
**(On Behalf of Nationwide Class for Injunctive and Equitable Relief)**

121.    Plaintiffs repeat and reallege the allegations set forth above as if set forth fully herein.

122.    Beginning at least as early as January 1, 2021, the exact date being unknown to Plaintiffs, and continuing through the present, Defendants and their Co-Conspirators entered into a continuing agreement to unreasonably restrain trade and commerce in violation of Section 1 of the Sherman Act (15 U.S.C. § 1) by artificially reducing or eliminating competition for the pricing of PVC Pipe manufactured to AWWA C900 industry standards sold directly to United States purchasers.

123.    In particular, Defendants and their Co-Conspirators have combined and conspired to raise, fix, maintain or stabilize the prices of PVC Pipe sold to United Sates purchasers during the Class Period.

124.    As a result of Defendants' and their Co-Conspirators' unlawful conduct and acts taken in furtherance of their conspiracy, prices for PVC Pipe sold to purchasers in the United States during the Class Period were raised, fixed, maintained, or stabilized at artificially inflated levels.

125.    The combination or conspiracy among Defendants and their Co-Conspirators consisted of a continuing agreement, understanding, and concerted action among Defendants and their Co-conspirators.

126. For purposes of formulating and effectuating their combination or conspiracy, Defendants and their Co-Conspirators did those things they combined or conspired to do, including:

    a.    Participating in meeting and conversations to discuss their respective prices for PVC Pipe and how they effectively coordinate their actions to restrain trade for these products;

    b.    Communicating in writing and orally to raise, fix, maintain, and stabilize prices for PVC Pipes;

    c.    Agree to coordinate and manipulate prices of these PVC Pipe directly sold to United States purchasers in a manner that deprived those purchasers of free and open price competition;

    d.    Issuing or signaling to each other price announcements and price quotations for PVC Pipe in accordance with the agreements Defendants and their Co-conspirators reached among themselves;

    e.    Selling PVC Pipe to United States purchasers at non-competitive and artificial prices that Defendants and their Co-conspirators collusively determined; and

    f.    Providing pretextual justifications to purchasers and the public to explain any rises, maintenance, or stabilization of the prices for Defendants' PVC Pipes.

127. As a result of Defendants' and their Co-Conspirators' anticompetitive conduct, Plaintiffs and the Class have been injured in their business and property in that they have paid more for PVC Pipe they purchased during the Class Period than they otherwise would have paid but for Defendants' conduct.

128.     Plaintiffs and the Class are entitled to an injunction against defendants, preventing and restraining the violations alleged herein.

**COUNT 2**
**Violation for Section 1 of the Sherman Act, 15 U.S.C. § 1**
**for Conspiracy to Exchange Competitive Information**
**(On Behalf of Nationwide Class for Injunctive and Equitable Relief)**

129.     Plaintiffs repeat and reallege the allegations set forth above as if set forth fully herein.

130.     Beginning at a time currently unknown to Plaintiffs, but at least as early as January 1, 2021, and continuing through the present, Defendants and their Co-Conspirators entered into a continuing agreement to regularly exchange detailed, timely, competitively sensitive and non-public information about their operations. This agreement is an unreasonable restraint of trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

131.     PVC Pipe is the relevant product market and the geographic market is the continental United States. The Converter Defendants possessed market power in the relevant product market during the Class Period.

132.     An increase in the price of PVC Pipes could be imposed collectively by other Defendants without causing many customers to switch their purchases to another product. PVC Pipe constitutes a unique product market.

133.     Defendants view PVC Pipes as fungible products. PVC Pipes are generally interchangeable, permitting the Converter Defendants to readily compare and match each other's pricing.

134.     The information regularly exchanged by Defendants pursuant to the agreement has consisted of detailed, competitively sensitive, and non-public information about pricing plans regarding PVC Pipes. Defendants' information exchanges specifically include the exchange through

OPIS of weekly reports regarding Defendants' PVC Pipe pricing that allowed Defendants to compare their prices with their competitors and raise prices that were lower.

135. The Converter Defendants' regular information exchanges through OPIS reflected the concerted action between horizontal competitors in the PVC Pipe market.

136. Each Converter Defendant integrator furnished competitively sensitive information to other Converter Defendants with the understanding that it would be reciprocated.

137. The agreement to regularly exchange detailed and non-public information about current and future pricing suppressed competition between the Defendants. OPIS specifically permitted the Converter Defendants to coordinate their price increases.

138. When Defendants competing for the same customers exchange competitive information, it reduces the incentives to compete on price. Accordingly, Defendants used the data obtained through OPIS to reduce the uncertainty that they each should have faced from not knowing what their competitors were offering and providing in the PVC Pipe market. This strategic information was a material factor in the Converter Defendants' decisions to inflate the prices that Plaintiffs paid for PVC Pipe during the Class Period.

139. Defendants' unlawful agreements to exchange, and the actual exchanges of the non-public, timely, and detailed data were reasonably necessary to further any procompetitive purpose. The information exchanged between Defendants was current, easily traceable to its source, confidential, and related to a core characteristic of competition between them.

140. The information exchange agreement has had the effect of (1) suppressing competition among Defendants in the market for PVC Pipe in the United States and (2) inflating the prices of PVC Pipe during the Class Period.

141.    As a result of the unlawful agreement alleged herein to exchange information, Plaintiffs and members of the Class have been injured in their business or property by paying artificially inflated prices for PVC Pipe during the Class Period.

## X.  VIOLATIONS OF STATE ANTITRUST LAWS

142.    Plaintiffs repeat and reallege the allegations set forth above as if fully set forth herein.

143.    During the Class Period, Defendants and their Co-Conspirators entered and engaged in a contract, combination, or conspiracy to fix, raise, maintain, and stabilize the price of PVC Pipes in various states to unreasonably restrain trade and commerce and harm consumers in violation of the various state antitrust and consumer protection laws set forth below.

144.    In formulating and effectuating this conspiracy, Defendants and their coconspirators performed acts in furtherance of the combination and conspiracy, including: agreeing to fix, raise, maintain, and stabilize the price of PVC Pipes which injured Plaintiffs and members of the Classes; exchange of competitively sensitive information between and among Defendants; and participating in meetings conversations among themselves in the United States and elsewhere to implement, adhere to, and police the unlawful agreements they reached.

145.    Defendants and their co-conspirators engaged in actions described above for the purpose of carrying out their unlawful agreements to fix, increase, maintain, or stabilize PVC Pipe prices at artificially high levels. As a direct and proximate result of Defendants' conduct, Plaintiffs and members of the Classes were deprived of free and open competition and paid more to purchase PVC Pipes than they otherwise would have in the absence of Defendants' unlawful conduct. This injury is of the type that the antitrust and consumer protection laws of the below states were designed to prevent and flows from that which makes Defendants' conduct unlawful.

146.     In addition, Defendants have profited significantly from the conspiracy. Defendants' profits derived from their anticompetitive conduct and come at the expense of and to the detriment of Plaintiffs and members of the Classes.

147.     Accordingly, Plaintiffs and the members of the State Law Damages Class in each of the following jurisdictions seek damages (including statutory damages where applicable), to be trebled or otherwise increased as permitted by each particular jurisdiction's law, injunction (where applicable), and costs of suit, including reasonable attorneys' fees, to the extent permitted by the following state laws.

148.     Defendants' anticompetitive acts described above were knowing and willful and constitute violations of the following state antitrust and consumer protection statutes.

149.     In the Claims for Relief that follow, a reference to the "Class" is a reference to the State Law Class unless otherwise specified.

## COUNT 3: ALABAMA
**(On Behalf of Class Members That Purchased PVC Pipes in Alabama)**

150.     Due to Defendants' unlawful conduct: (1) competition for PVC Pipe was restrained, suppressed, and eliminated within Alabama; (2) PVC Pipe prices in the State of Alabama were raised, fixed, maintained, stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. Defendants' agreement was an unlawful agreement to restrain trade in the State of Alabama in violation of ALA. CODE § 8-10-1 *et seq*. Defendants' conspiracy substantially affected Alabama commerce and accordingly, Plaintiffs and the members of the Class seek all forms of relief available under ALA. CODE § 6-5-60 *et seq*.

## COUNT 4: ARIZONA
**(On Behalf of Class Members That Purchased PVC Pipes in Arizona)**

151.     Defendants' conspiracy had the following effects: (1) price competition for PVC Pipe was restrained, suppressed, and eliminated throughout Arizona; (2) prices of PVC Pipe in the State

of Arizona were raised, fixed, maintained, stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. During the Class Period, Defendants' illegal conduct substantially affected Arizona commerce.

152. Defendants' agreement was an unlawful agreement to restrain trade in the State of Arizona in violation of ARIZ REV. STAT. § 44-1401 *et seq.* Accordingly, Plaintiffs and members of the Class seek all forms of relief available under ARIZ REV. STAT. § 44-1401 *et seq.*

## COUNT 5: ARKANSAS
### (On Behalf of Class Members That Purchased PVC Pipes in Arkansas)

153. Defendants' conspiracy had the following effects: (1) price competition for PVC Pipe was restrained, suppressed, and eliminated throughout Arkansas; (2) prices of PVC Pipe in the State of Arizona were raised, fixed, maintained, stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. During the Class Period, Defendants' illegal conduct substantially affected Arizona commerce.

154. Defendants' agreement was an unlawful agreement to restrain trade and involved deceptive pricing practices in the State of Arkansas in violation of Arkansas Deceptive Trade Practices Act, ARK. CODE ANN. §§ 4-88-101, *et seq.* Accordingly, Plaintiffs and members of the Class seek all forms of relief available under ARK. CODE ANN. § 4-88-113(f).

## COUNTS 6 & 7: CALIFORNIA
### (On Behalf of Class Members That Purchased PVC Pipes in California)

155. Defendants' conspiracy had the following effects: (1) price competition for PVC Pipe was restrained, suppressed, and eliminated throughout California; (2) PVC Pipe prices in the State of California were raised, fixed, maintained, stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. During the Class Period, Defendants' illegal conduct substantially affected California commerce and consumers.

156.    Defendants have entered into an unlawful agreement in restraint of trade in violation of CAL. BUS. & PROF. CODE § 16700 *et seq.* During the Class Period, Defendants and their co-conspirators entered into and engaged in a continuing unlawful trust in restraint of the trade and commerce. Each Defendant has acted in violation of CAL. BUS. & PROF. CODE § 16720 to fix, raise, maintain, and stabilize the price of PVC Pipes. The violations of CAL. BUS. & PROF. CODE § 16720 consisted, without limitation, of a continuing unlawful trust and concert of action among Defendants and their co-conspirators, the substantial terms of which were to fix, raise, maintain, and stabilize the price of PVC Pipes. For the purpose of forming and effectuating the unlawful trust, Defendants and their co-conspirators have done those things which they combined and conspired to do, including, but not limited to, the acts, practices and course of conduct set forth above, and creating a price floor, fixing, raising, and stabilizing the prices of PVC Pipes. As a result of Defendants' violation of CAL. BUS .& PROF. CODE §16720, Plaintiffs and members of the Class seek treble damages and their cost of suit, including a reasonable attorneys' fee, pursuant to CAL. BUS. & PROF. CODE § 16750(a).

157.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of CAL. BUS. & PROF. CODE § 17200 *et seq.*, and, accordingly, Plaintiffs and members of the Class seek all relief available under that statute.

### COUNTS 8 & 9: COLORADO
### (On Behalf of Class Members That Purchased PVC Pipes in Colorado)

158.    Defendants' conspiracy had the following effects: (1) price competition for PVC Pipe was restrained, suppressed, and eliminated throughout Colorado; (2) PVC Pipe prices in the State of Colorado were raised, fixed, maintained, and stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. During the Class Period, Defendants' illegal conduct substantially affected Colorado commerce and consumers.

159.     Defendants have violated COLO. REV. STAT. § 6-4-101 *et seq.* Accordingly, Plaintiffs and members of the Class seek all forms of relief available under COLO. REV. STAT. § 6-4-101 *et seq.*

160.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of COLO. REV. STAT. § 6-1-101 *et seq.* and, accordingly, Plaintiffs and members of the Class seek all relief available under that statute.

### COUNT 10: CONNECTICUT
### (On Behalf of Class Members That Purchased PVC Pipes in Connecticut)

161.     Defendants have entered into an unlawful agreement in restraint of trade in violation of CONN. GEN. STAT. § 35-24 *et seq.* Defendants' combination or conspiracy had the following effects: (1) price competition for PVC Pipe was restrained, suppressed, and eliminated throughout Connecticut; (2) PVC Pipe prices in the State of Connecticut were fixed, controlled, and maintained at artificially high levels; and (3) individuals have been deprived of free and open competition. During the Class Period, Defendants' illegal conduct substantially affected Connecticut commerce. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of CONN. GEN. STAT. § 35-24 *et seq.* Accordingly, Plaintiffs and members of the Class seek all forms of relief available under CONN. GEN. STAT. § 35- 24 *et seq.*

### COUNTS 11 & 12: DISTRICT OF COLUMBIA
### (On Behalf of Class Members That Purchased PVC Pipes in the District of Columbia)

162.     Defendants' combination or conspiracy had the following effects: (1) price competition for PVC Pipe was restrained, suppressed, and eliminated throughout the District of Columbia; (2) PVC Pipe prices were raised, fixed, maintained, and stabilized at artificially high levels throughout the District of Columbia; and (3) Plaintiffs and members of the Class, including those who resided in the District of Columbia and purchased PVC Pipe in the District of Columbia, paid

supracompetitive, artificially inflated prices for PVC Pipes. During the Class Period, Defendants' illegal conduct substantially affected commerce in the District of Columbia.

163.    Defendants have entered into agreements in restraint of trade in violation of D.C. CODE §28-4501 *et seq.* Accordingly, Plaintiffs and members of the Class seek all forms of relief available under D.C. CODE § 28-4501 *et seq*.

164.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of D.C. CODE § 28-3901 *et seq.,* and, accordingly, Plaintiffs and members of the Class seek all relief available under that statute.

### Plaintiffs PVC Pipe Plaintiffs COUNT 13 &14: HAWAII
### (On Behalf of Class Members That Purchased PVC Pipes in Hawaii)

165.    Defendants have violated HAW. REV. STAT. ANN. §§ 480-2 and 480-4. Through Defendants' actions and the actions of their co-conspirators, PVC Pipe prices in the State of Hawaii were raised, fixed, maintained, and stabilized at artificially high levels, thereby injuring Plaintiffs and the Class. Throughout the Class Period, price competition for PVC Pipe was restrained, suppressed, and eliminated throughout the State of Hawaii. Plaintiffs and members of the Class, including those who resided in the State of Hawaii and purchased PVC Pipe in Hawaii, paid supracompetitive, artificially inflated prices for their PVC Pipes. During the Class Period, Defendants' illegal conduct substantially affected commerce in Hawaii. Accordingly, Plaintiffs and members of the Class seek all forms of relief available under HAW. REV. STAT. ANN. § 480-13.

### COUNTS 15 & 16: ILLINOIS
### (On Behalf of Class Members That Purchased PVC Pipes in Illinois)

166.    Defendants' combination or conspiracy had the following effects: (1) price competition in the PVC Pipe market was restrained, suppressed, and eliminated throughout the State of Illinois; and (2) PVC Pipe prices were raised, fixed, maintained, and stabilized at artificially high levels

throughout the State of Illinois. During the Class Period, Defendants' illegal conduct substantially affected Illinois commerce.

167.    Defendants have entered into agreements in restraint of trade in violation of 740 ILL. COMP. STAT. 10/1 *et seq.* Accordingly, Plaintiffs and members of the Class seek all forms of relief available under 740 ILL. COMP. STAT. 10/7.

168.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 815 ILL. COMP. STAT. 505/1 *et seq.*, and, accordingly, Plaintiffs and members of the Class seek all relief available under that statute.

### COUNT 17: IOWA
### (On Behalf of Class Members That Purchased PVC Pipes in Iowa)

169.    Defendants have entered into an unlawful agreement in restraint of trade in violation of IOWA CODE § 553.1 *et seq.* Defendants' combination or conspiracy had the following effects: (1) price competition for PVC Pipe was restrained, suppressed, and eliminated throughout the State of Iowa; and (2) PVC Pipe prices were raised, fixed, maintained and stabilized at artificially high levels throughout the State of Iowa. During the Class Period, Defendants' illegal conduct substantially affected Iowa commerce. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of IOWA CODE § 553.1 *et seq.* Accordingly, Plaintiffs and members of the Class seek all forms of relief available under IOWA CODE § 553.12.

### COUNT 18: KANSAS
### (On Behalf of Class Members That Purchased PVC Pipes in Kansas)

170.    Defendants have entered into an unlawful agreement in restraint of trade in violation of KAN. STAT. ANN. § 50-101 *et seq.* Defendants' combination or conspiracy had the following effects: (1) price competition for PVC Pipe was restrained, suppressed, and eliminated throughout the State of Kansas; (2) PVC Pipe prices in the State of Kansas were raised, fixed, maintained, and stabilized at artificially high levels; and (3) individuals have been deprived of free and open

competition. During the Class Period, Defendants' illegal conduct substantially affected Kansas commerce. Accordingly, Plaintiffs and members of the Class seek all forms of relief available under KAN. STAT. ANN. § 50-161.

## COUNT 19: MAINE
### (On Behalf of Class Members That Purchased PVC Pipes in Maine)

171. Defendants have entered into an unlawful agreement in restraint of trade in violation of ME. STAT. tit. 10, § 1101. Defendants' combination or conspiracy had the following effects: (1) price competition for PVC Pipe was restrained, suppressed, and eliminated throughout the State of Maine; and (2) PVC Pipe prices in the State of Maine were raised, fixed, maintained, and stabilized at artificially high levels. During the Class Period, Defendants' illegal conduct substantially affected Maine commerce. Accordingly, Plaintiffs and members of the Class seek all relief available under ME. STAT. tit. 10, § 1104.

## COUNTS 20 & 21: MARYLAND
### (On Behalf of Class Members That Purchased PVC Pipes in Maryland)

172. Defendants' combination or conspiracy detrimentally affected the price competition in the State of Maryland for PVC Pipe by restraining, suppressing, and eliminating competition. Furthermore, Defendants' unlawful conduct raised, fixed, maintained, and stabilized PVC Pipe prices in the State of Maryland at artificially high levels. During the Class Period, Defendants' illegal conduct substantially affected Maryland commerce.

173. Defendants violated the MD. CODE ANN., COM. LAW § 11-201 *et seq.*, by entering into unlawful agreements in restraint of trade in the State of Maryland. Accordingly, Plaintiffs and members of the Class seek all relief available under MD. CODE ANN., COM. LAW § 11-209(4).

174. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of MD. CODE ANN., COM. LAW § 13-101 *et seq.*, and, accordingly, Plaintiffs and members of the Class seek all relief available under that statute.

## COUNT 22: MASSACHUSETTS
### (On Behalf of Class Members That Purchased PVC Pipes in Massachusetts)

175.     Defendants' combination or conspiracy detrimentally affected the price competition in the State of Massachusetts for PVC Pipe by restraining, suppressing, and eliminating competition. Furthermore, Defendants' unlawful conduct raised, fixed, maintained, and stabilized PVC Pipe prices in the State of Massachusetts at artificially high levels. During the Class Period, Defendants' illegal conduct substantially affected Massachusetts commerce.

176.     Defendants violated MASS. GEN. LAWS CH. 93A §§ 1, *et seq*., by entering into unlawful agreements in restraint of trade in the State of Massachusetts. Accordingly, Plaintiffs and members of the Class seek all relief available under including treble damages, under Mass. Gen. Laws Ch. 93A § 9.

## COUNTS 23 & 24: MICHIGAN
### (On Behalf of Class Members That Purchased PVC Pipes in Michigan)

177.     Defendants' combination or conspiracy had the following effects: (1) price competition for PVC Pipe was restrained, suppressed, and eliminated throughout the State of Michigan; and (2) PVC Pipe prices were raised, fixed, maintained, and stabilized at artificially high levels throughout the State of Michigan. During the Class Period, Defendants' illegal conduct substantially affected Michigan commerce.

178.     Defendants have entered into an unlawful agreement in restraint of trade in violation of MICH. COMP. LAWS § 445.771 *et seq.* Accordingly, Plaintiffs and members of the Class seek all relief available under MICH. COMP. LAWS § 445.778.

179.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of MICH. COMP. LAWS § 445.901 *et seq*., and, accordingly, Plaintiffs and members of the Class seek all relief available under that statute.

## COUNTS 25 & 26: MINNESOTA
### (On Behalf of Class Members That Purchased PVC Pipes in Minnesota)

180.    Through their actions and actions of co-conspirators, PVC Pipe prices in the State of Minnesota were raised, fixed, maintained, and stabilized at an artificially high level, thereby injuring Plaintiffs and the Class. Throughout the Class Period, price competition in the market for PVC Pipe was restrained, suppressed, and eliminated throughout the State of Minnesota. Plaintiffs and members of the Class, including those who resided in the State of Minnesota and purchased PVC Pipe there, paid supracompetitive, artificially inflated prices for PVC Pipes. During the Class Period, Defendants' illegal conduct substantially affected commerce in the State of Minnesota.

181.    Defendants have violated the MINN. STAT. § 325D.49 *et seq*., through their anticompetitive actions. Accordingly, Plaintiffs and members of the Class seek all forms of relief available under MINN. STAT. § 325D.57.

182.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of MINN. STAT. § 325F.68 *et seq*., and, accordingly, Plaintiffs and members of the Class seek all relief available under that statute.

## COUNT 27: MISSISSIPPI
### (On Behalf of Class Members That Purchased PVC Pipes in Mississippi)

183.    Defendants have entered into an unlawful agreement in restraint of trade in violation of MISS. CODE ANN. § 75-21-1 *et seq.* Defendants' combination or conspiracy had the following effects: (1) price competition for PVC Pipe was restrained, suppressed, and eliminated throughout the State of Mississippi; and (2) PVC Pipe prices were raised, fixed, maintained, and stabilized at artificially high levels throughout the State of Mississippi. During the Class Period, Defendants' illegal conduct substantially affected the State of Mississippi commerce. Accordingly, Plaintiffs and members of the Class seek all relief available under MISS. CODE ANN. § 75-21-9.

## COUNTS 28 & 29: NEBRASKA
### (On Behalf of Class Members That Purchased PVC Pipes in Nebraska)

184. Defendants' combination or conspiracy had the following effects: (1) price competition for PVC Pipe was restrained, suppressed, and eliminated throughout the State of Nebraska; and (2) PVC Pipe prices were raised, fixed, maintained, and stabilized at artificially high levels throughout the State of Nebraska. During the Class Period, Defendants' illegal conduct substantially affected the State of Nebraska commerce.

185. Defendants restrained trade and commerce in the State of Nebraska by entering into an unlawful agreement in violation of NEB. REV. STAT. § 59-801 *et seq*. Accordingly, Plaintiffs and members of the Class seek all relief available under NEB. REV. STAT. § 59-821.

186. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of NEB. REV. STAT. § 59-1601 *et seq*., and, accordingly, Plaintiffs and members of the Class seek all relief available under that statute.

## COUNTS 30 & 31: NEVADA
### (On Behalf of Class Members That Purchased PVC Pipes in Nevada)

187. Defendants' conspiracy had the following effects: (1) price competition for PVC Pipe was restrained, suppressed, and eliminated throughout the State of Nevada; (2) PVC Pipe prices in the State of Nevada were raised, fixed, maintained, stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition.

188. Defendants violated the NEV. REV. STAT. ANN. § 598A.010 *et seq*., by entering into unlawful agreements in restraint of trade in the State of Nevada. As a result of the Defendants' violation of NEV. REV. STAT. ANN. § 598A.010 *et seq.* Plaintiffs and members of the Class seek treble damages and their cost of suit, including reasonable attorneys' fees, pursuant to NEV. REV. STAT. ANN. § 598A.210.

189.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of NEV. REV. STAT. § 598.0903 *et seq*., and, accordingly, Plaintiffs and members of the Class seek all relief available under that statute.

### COUNTS 32 & 33: NEW HAMPSHIRE
### (On Behalf of Class Members That Purchased PVC Pipes in New Hampshire)

190.    Defendants' combination or conspiracy detrimentally affected the price competition in the State of New Hampshire PVC Pipe market by restraining, suppressing, and eliminating competition. Further, Defendants' unlawful conduct raised, fixed, maintained, and stabilized PVC Pipe prices in the State of New Hampshire at artificially high levels. During the Class Period, Defendants' illegal conduct substantially affected the State of New Hampshire commerce.

191.    Defendants have entered into an unlawful agreement in restraint of trade in violation of N.H. REV. STAT. ANN. § 356:1 *et seq.* Accordingly, Plaintiffs and members of the Class seek all relief available under N.H. REV. STAT. ANN. § 356:11.

192.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.H. REV. STAT. ANN. tit. XXXI § 358-A:1 *et seq*., and, accordingly, Plaintiffs and members of the Class seek all relief available under that statute.

### COUNTS 34 & 35: NEW MEXICO
### (On Behalf of Class Members That Purchased PVC Pipes in New Mexico)

193.    Defendants' combination or conspiracy detrimentally affected the price competition in the State of New Mexico for PVC Pipe by restraining, suppressing, and eliminating competition. Furthermore, Defendants' unlawful conduct raised, fixed, maintained, and stabilized PVC Pipe prices in the State of New Mexico at artificially high levels. During the Class Period, Defendants' illegal conduct substantially affected commerce in the State of New Mexico.

194. Defendants violated the N.M. STAT. ANN. § 57-1-1 *et seq*., by entering into unlawful agreement in restraint of trade in the State of New Mexico. Accordingly, Plaintiffs and members of the Class seek all relief available under N.M. STAT. ANN. § 57-1-3(A).

195. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.M. STAT. ANN. §57-12-1 *et seq*., and, accordingly, Plaintiffs and members of the Class seek all relief available under that statute.

## COUNT 36: NEW YORK
### (On Behalf of Class Members That Purchased PVC Pipes in New York)

196. Defendants have entered into an unlawful agreement in restraint of trade in violation of N.Y. GEN. BUS. LAW § 340 *et seq.* Defendants' combination or conspiracy had the following effects: (1) price competition in the market for PVC Pipe was restrained, suppressed, and eliminated throughout the State of New York; and (2) PVC Pipe prices were raised, fixed, maintained, and stabilized at artificially high levels throughout the State of New York. During the Class Period, Defendants' illegal conduct substantially affected the State of New York commerce. The conduct set forth above is a per se violation of the Donnelly Act, N.Y. GEN. BUS. LAW § 340 *et seq.* Accordingly, Plaintiffs and members of the Class seek all relief available under N.Y. GEN BUS. LAW § 340 *et seq*.

## COUNT 37 & 38: NORTH CAROLINA
### (On Behalf of Class Members That Purchased PVC Pipes in North Carolina)

197. Defendants have entered into an unlawful agreement in restraint of trade in violation of N.C. GEN STAT. § 75-1 *et seq.* Defendants' combination or conspiracy had the following effects: (1) price competition in the market for PVC Pipe was restrained, suppressed, and eliminated throughout the State of North Carolina; and (2) PVC Pipe prices were raised, fixed, maintained, and stabilized at artificially high levels throughout the State of North Carolina. During the Class Period, Defendants' illegal conduct substantially affected the State of North Carolina commerce.

Accordingly, Plaintiffs and members of the Class seek all relief available under N.C. GEN. STAT. § 75-16.

198.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.C. GEN. STAT. §§ 75-1.1, *et seq*., and, accordingly, Plaintiffs and members of the Class seek all relief available under that statute.

## COUNT 39: NORTH DAKOTA
### (On Behalf of Class Members That Purchased PVC Pipes in North Dakota)

199.    Defendants' actions have violated the N.D. CENT. CODE § 51-08.1-01 *et seq.* through their anticompetitive actions. Through their actions and actions of co-conspirators, PVC Pipe prices in the State of North Dakota were raised, fixed, maintained, and stabilized at artificially high levels, thereby injuring Plaintiffs and the Class. Throughout the Class Period, price competition in the market for PVC Pipe was restrained, suppressed, and eliminated throughout the State of North Dakota. Plaintiffs and members of the Class, including those who resided in the State of North Dakota and purchased PVC Pipe there, paid supracompetitive, artificially inflated prices. During the Class Period, Defendants' illegal conduct substantially affected commerce in the State of North Dakota. Accordingly, Plaintiffs and members of the Class seek all forms of relief available under N.D. CENT. CODE § 51-08.1-08.

## COUNTS  40 & 41: OREGON
### (On Behalf of Class Members That Purchased PVC Pipes in Oregon)

200.    Defendants' combination or conspiracy had the following effects: (1) price competition for PVC Pipe was restrained, suppressed, and eliminated throughout the State of Oregon; (2) PVC Pipe prices in the State of Oregon were raised, fixed, maintained, and stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. During the Class Period, Defendants' illegal conduct substantially affected the State of Oregon commerce.

201.    Defendants have entered into an unlawful agreement in restraint of trade in violation of OR. REV. STAT. § 646.705 *et seq.* Accordingly, Plaintiffs and members of the Class seek all forms of relief available under OR. REV. STAT. § 646.780.

202.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of OR. REV. STAT. § 646.605 *et seq.*, and, accordingly, Plaintiffs and members of the Class seek all relief available under that statute.

## COUNTS 42 & 43: RHODE ISLAND
### (On Behalf of Class Members That Purchased PVC Pipes in Rhode Island)

203.    Defendants' combination or conspiracy detrimentally affected the price competition in the State of Rhode Island for PVC Pipe market by restraining, suppressing, and eliminating competition. Furthermore, Defendants' unlawful conduct raised, fixed, maintained, and stabilized PVC Pipe prices in the State of Rhode Island at artificially high levels. During the Class Period, Defendants' illegal conduct substantially affected commerce in the State of Rhode Island.

204.    Defendants have entered into an unlawful agreement in restraint of trade in violation of R.I. GEN. LAWS § 6-36-1 *et seq.* Accordingly, Plaintiffs and members of the Class seek all relief available under R.I. GEN LAWS § 6-36-11.

205.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of R.I. GEN. LAWS § 6-13.1-1, and, accordingly, Plaintiffs and members of the Class seek all relief available under that statute.

## COUNTS 44: SOUTH CAROLINA
### (On Behalf of Class Members That Purchased PVC Pipes in South Carolina)

206.    Defendants' combination or conspiracy detrimentally affected the price competition in the State of Rhode Island for PVC Pipe market by restraining, suppressing, and eliminating competition. Furthermore, Defendants' unlawful conduct raised, fixed, maintained, and stabilized

PVC Pipe prices in the State of South Carolina at artificially high levels. During the Class Period, Defendants' illegal conduct substantially affected commerce in the State of South Carolina.

207. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.C. CODE ANN. §§ 39-5-10 *et seq.*, and, accordingly, Plaintiffs and members of the Class seek all relief available under that statute, including treble damages under S.C. CODE ANN. § 39-5-140.

### COUNTS 45 & 46: SOUTH DAKOTA
### (On Behalf of Class Members That Purchased PVC Pipes in South Dakota)

208. Through their actions and actions of co-conspirators, PVC Pipe prices in the State of South Dakota were raised, fixed, maintained, and stabilized at artificially high levels, thereby injuring Plaintiffs and the Class. Throughout the Class Period, price competition in the market for PVC Pipe was restrained, suppressed, and eliminated throughout the State of South Dakota. During the Class Period, Defendants' illegal conduct substantially affected commerce in the State of South Dakota. Plaintiffs and members of the Class, including those who resided in the State of South Dakota and purchased PVC Pipe there, paid supracompetitive, artificially inflated prices for their PVC Pipes.

209. Defendants have violated S.D. CODIFIED LAWS § 37-1-1 *et seq.*, through their anticompetitive actions. Accordingly, Plaintiffs and members of the Class seek all forms of relief available under S.D. CODIFIED LAWS § 37-1-24.

210. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.D. CODIFIED LAWS § 37-24 *et seq.,* and, accordingly, Plaintiffs and members of the Class seek all relief available under that statute.

## COUNT 47: TENNESSEE
### (On Behalf of Class Members That Purchased PVC Pipes in Tennessee)

211.    Defendants have entered into an unlawful agreement in restraint of trade in violation of TENN. CODE ANN. § 47-25-101 *et seq.* Defendants' combination or conspiracy had the following effects: (1) price competition for the sale of PVC Pipes, tangible goods was restrained, suppressed, and eliminated throughout the State of Tennessee; (2) prices for PVC Pipes, tangible goods, in the State of Tennessee were raised, fixed, maintained, and stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. During the Class Period, Defendants' illegal conduct substantially affected commerce in the State of Tennessee. Accordingly, Plaintiffs and members of the Class seek all forms of relief available under TENN CODE. ANN. § 47-25-106.

## COUNT 48: UTAH
### (On Behalf of Class Members That Purchased PVC Pipes in Utah)

212.    Defendants violated the UTAH CODE ANN. § 76-10-3101 *et seq.* by entering into unlawful agreements in restraint of trade in the State of Utah. Specifically, Defendants' combinations or conspiracies detrimentally affected the price competition in the State of Utah for the PVC Pipe market by restraining, suppressing, and eliminating competition. Furthermore, Defendants' unlawful conduct raised, fixed, maintained, and stabilized PVC Pipe prices in Utah at artificially high levels. During the Class Period, Defendants' illegal conduct substantially affected commerce in the State of Utah. Accordingly, Plaintiffs and members of the Class seek all relief available under UTAH CODE ANN. § 76-10-3109.

## COUNT 49: VERMONT
### (On Behalf of Class Members That Purchased PVC Pipes in Vermont)

213.    Defendants' combinations or conspiracies had the following effects: (1) price competition for PVC Pipe was restrained, suppressed, and eliminated throughout the State of Vermont; (2) PVC Pipe prices in the State of Vermont were raised, fixed, maintained, and stabilized

at artificially high levels; and (3) individuals have been deprived of free and open competition. Defendants have entered into an unlawful agreement in restraint of trade in violation of VT. STAT. ANN. tit. 9, § 2451 *et seq.* During the Class Period, Defendants' illegal conduct substantially affected commerce in the State of Vermont. Accordingly, Plaintiffs and members of the Class seek all forms of relief available under VT. STAT. ANN. tit. 9, § 2465.

## COUNT 50: WEST VIRGINIA
### (On Behalf of Class Members That Purchased PVC Pipes in West Virginia)

214.    Defendants' combinations or conspiracies had the following effects: (1) price competition for PVC Pipe was restrained, suppressed, and eliminated throughout the State of West Virginia, (2) PVC Pipe prices in the State of West Virginia were raised, fixed, maintained, and stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. Defendants have entered into an unlawful agreement in restraint of trade in violation of W. VA. CODE §§ 47-18-1, *et seq.* During the Class Period, Defendants' illegal conduct substantially affected commerce in the State of Vermont. Accordingly, Plaintiffs and members of the Class seek all forms of relief available including treble damages, under W. VA. CODE §§ 47-18-9.

## COUNT 51: WISCONSIN
### (On Behalf of Class Members That Purchased PVC Pipes in Wisconsin)

215.    Defendants' combinations or conspiracies had the following effects: (1) price competition for PVC Pipe was restrained, suppressed, and eliminated throughout the State of Wisconsin, (2) PVC Pipe prices in the State of Wisconsin were raised, fixed, maintained, and stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. Defendants have entered into an unlawful agreement in restraint of trade in violation of WIS. STAT. ANN. §§ 133.01, *et seq.* During the Class Period, Defendants' illegal conduct substantially affected commerce in the State of Wisconsin. Accordingly, Plaintiffs and members of the Class seek all forms of relief available including treble damages, under WIS. STAT. ANN. §§ 133.18.

## XI. UNJUST ENRICHMENT

### COUNT 52
### (on Behalf of Plaintiffs and the Nationwide Class, excluding Ohio and Indiana)

216.    Plaintiffs incorporate by reference the preceding allegations as if fully set forth herein.

217.    To the extent required, this claim is pleaded in the alternative to the other claims in this Complaint.

218.    Defendants have unlawfully benefited from their sales of PVC Pipe because of the unlawful and inequitable acts alleged in this Complaint. Defendants unlawfully overcharged Plaintiffs and members of the Class, who made purchases of or reimbursements for PVC Pipe at prices that were more than they would have been but for Defendants' unlawful actions.

219.    Defendants' financial benefits resulting from their unlawful and inequitable acts are traceable to overpayments by Plaintiffs and the Statewide Damages Class.

220.    Plaintiffs and the Statewide Damages Class have conferred upon Defendants an economic benefit, in the nature of profits resulting from unlawful overcharges to the economic detriment of Plaintiffs and the Statewide Damages Class.

221.    Defendants have been enriched by revenue resulting from unlawful overcharges for PVC Pipe while Plaintiffs and the Statewide Damages Class have been impoverished by the overcharges they paid for PVC Pipe imposed through Defendants' unlawful conduct. Defendants' enrichment and Plaintiffs' and the Statewide Damages Class's impoverishment are connected

222.    There is no justification for Defendants' retention of, and enrichment from, the benefits they received, which caused impoverishment to Plaintiffs and the Statewide Damages Class, because Plaintiffs and the Statewide Damages Class paid supracompetitive prices that

inured to Defendants' benefit, and it would be inequitable for Defendants to retain any revenue gained from their unlawful overcharges.

223. Plaintiffs and the Statewide Damages Class did not interfere with Defendants' affairs in any manner that conferred these benefits upon Defendants.

224. The benefits conferred upon Defendants were not gratuitous, in that they constituted revenue created by unlawful overcharges arising from Defendants' illegal and unfair actions to inflate the prices of PVC Pipes.

225. The benefits conferred upon Defendants are measurable, in that the revenue Defendants have earned due to their unlawful overcharges of PVC Pipe are ascertainable by review of sales records.

226. It would be futile for Plaintiffs and the Statewide Damages Class to seek a remedy from any party with whom they have privity of contract. Defendants have paid no consideration to any other person for any of the unlawful benefits they received indirectly from Plaintiffs and the Statewide Damages Class with respect to Defendants' sales of PVC Pipes.

227. It would be futile for Plaintiffs and the Statewide Damages Class to seek to exhaust any remedy against the immediate intermediary in the chain of distribution from which they indirectly purchased PVC Pipes, as the intermediaries are not liable and cannot reasonably be expected to compensate Plaintiffs and the Statewide Damages Class for Defendants' unlawful conduct.

228. The economic benefit of overcharges and monopoly profits derived by Defendants through charging supracompetitive and artificially inflated prices for PVC Pipe is a direct and proximate result of Defendants' unlawful practices.

229. The financial benefits derived by Defendants rightfully belong to Plaintiffs and the Statewide Damages Class, because Plaintiffs and the Statewide Damages Class paid supracompetitive prices during the Class Period, inuring to the benefit of Defendants.

230. It would be inequitable under unjust enrichment principles under the laws of all States (except Ohio and Indiana) and of the District of Columbia, Puerto Rico and the U.S. Virgin Islands, for Defendants to be permitted to retain any of the overcharges for PVC Pipe derived from Defendants' unlawful, unfair and unconscionable methods, acts, and trade practices alleged in this Complaint.

231. Defendants are aware of and appreciate the benefits bestowed upon them by Plaintiffs and the Statewide Damages Class. Defendants consciously accepted the benefits and continue to do so as of the date of this filing.

232. Defendants should be compelled to disgorge in a common fund for the benefit of Plaintiffs and the Statewide Damages Class all unlawful or inequitable proceeds they received from their sales of PVC Pipes.

233. A constructive trust should be imposed upon all unlawful or inequitable sums received by Defendants traceable to indirect purchases of PVC Pipe by Plaintiffs and the Statewide Damages Class.

234. Plaintiffs and the Statewide Damages Class have no adequate remedy at law.

235. By engaging in the foregoing unlawful or inequitable conduct depriving Plaintiffs and the Statewide Damages Class of the opportunity to purchase lower-priced generic versions of PVC Pipe and forcing them to pay higher prices for PVC Pipes, Defendants have been unjustly enriched in violation of the common law of various states, as outlined below:

**ALABAMA**

236. Defendants unlawfully overcharged Plaintiffs and members of the Class, who made purchases of or reimbursements for PVC Pipe in Alabama at prices that were more than they would have been but for Defendants' actions. Defendants received money from Plaintiffs and the Statewide Damages Class as a direct result of the unlawful overcharges, and have retained this money. Defendants have benefitted at the expense of Plaintiffs and the Statewide Damages Class from revenue resulting from unlawful overcharges for PVC Pipes. It is inequitable for Defendants to accept and retain the benefits received without compensating Plaintiffs and the Statewide Damages Class.

**ALASKA**

237. Defendants unlawfully overcharged Plaintiffs and members of the Class, who made purchases of or reimbursements for PVC Pipe in Alaska at prices that were more than they would have been but for Defendants' actions. Plaintiffs and the Statewide Damages Class have conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of Plaintiffs and the Statewide Damages Class. Defendants appreciated the benefits bestowed upon them by Plaintiffs and the Statewide Damages Class. Defendants accepted and retained the benefits bestowed upon them under inequitable and unjust circumstances arising from unlawful overcharges to Plaintiffs and the Statewide Damages Class. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating Plaintiffs and the Statewide Damages Class.

**ARIZONA**

238. Defendants unlawfully overcharged Plaintiffs and members of the Class, who made purchases of or reimbursements for PVC Pipe in Arizona at prices that were more than they would

have been but for Defendants' actions. Defendants have been enriched by revenue resulting from unlawful overcharges for PVC Pipes. Plaintiffs and the Statewide Damages Class have been impoverished by the overcharges for PVC Pipe resulting from Defendants' unlawful conduct. Defendants' enrichment and Plaintiffs' and the Statewide Damages Class's impoverishment are connected. There is no justification for Defendants' receipt of the benefits causing their enrichment and Plaintiffs' and the Statewide Damages Class's impoverishment, because Plaintiffs and the Statewide Damages Class paid supracompetitive prices that inured to Defendants' benefit, and it would be inequitable for Defendants to retain any revenue gained from their unlawful overcharges. Plaintiffs and the Statewide Damages Class have no remedy at law.

**ARKANSAS**

239. Defendants unlawfully overcharged Plaintiffs and members of the Class, who made purchases of or reimbursements for PVC Pipe in Arkansas at prices that were more than they would have been but for Defendants' actions. Defendants received money from Plaintiffs and the Statewide Damages Class as a direct result of the unlawful overcharges, and have retained this money. Defendants have paid no consideration to any other person in exchange for this money. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating Plaintiffs and the Statewide Damages Class.

**CALIFORNIA**

240. Defendants unlawfully overcharged Plaintiffs and members of the Class, who made purchases of or reimbursements for PVC Pipe in California at prices that were more than they would have been but for Defendants' actions. Defendants have received a benefit from Plaintiffs and the Statewide Damages Class as a direct result of the unlawful overcharges. Defendants retained

the benefits bestowed upon them under inequitable and unjust circumstances at the expense of Plaintiffs and the Statewide Damages Class.

**COLORADO**

241.    Defendants unlawfully overcharged Plaintiffs and members of the Class, who made purchases of or reimbursements for PVC Pipe in Colorado at prices that were more than they would have been but for Defendants' actions.  Defendants have received a benefit from Plaintiffs and the Statewide Damages Class in the nature of revenue resulting from the unlawful overcharges, which revenue resulted from anticompetitive prices that inured to the benefit of Defendants.  Defendants have benefitted at the expense of Plaintiffs and the Statewide Damages Class. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating Plaintiffs and the Statewide Damages Class.

**CONNECTICUT**

242.    Defendants unlawfully overcharged Plaintiffs and members of the Class, who made purchases of or reimbursements for PVC Pipe in Connecticut at prices that were more than they would have been but for Defendants' actions.  Defendants benefited in the nature of revenue resulting from unlawful overcharges to the economic detriment of Plaintiffs and the Statewide Damages Class. Defendants have paid no consideration to any other person in exchange for this benefit. Defendants retained the benefits bestowed upon them under inequitable and unjust circumstances at the expense of Plaintiffs and the Statewide Damages Class.

**DELAWARE**

243.    Defendants unlawfully overcharged Plaintiffs and members of the Class, who made purchases of or reimbursements for PVC Pipe in Delaware at prices that were more than they would have been but for Defendants' actions.  Defendants have been enriched by revenue resulting from

unlawful overcharges for PVC Pipes. Plaintiffs and the Statewide Damages Class have been impoverished by the overcharges for PVC Pipe resulting from Defendants' unlawful conduct. Defendants' enrichment and Plaintiffs' and the Statewide Damages Class's impoverishment are connected. There is no justification for Defendants' receipt of the benefits causing their enrichment because Plaintiffs and the Statewide Damages Class paid supracompetitive prices that inured to Defendants' benefit, and it would be inequitable for Defendants to retain any revenue gained from their unlawful overcharges. Plaintiffs and the Statewide Damages Class have no remedy at law.

**DISTRICT OF COLUMBIA**

244.     Defendants unlawfully overcharged Plaintiffs and members of the Class, who made purchases of or reimbursements for PVC Pipe in the District of Columbia at prices that were more than they would have been but for Defendants' actions. Plaintiffs and the Statewide Damages Class have conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of Plaintiffs and the Statewide Damages Class. Defendants retained the benefit bestowed upon them under inequitable and unjust circumstances arising from unlawful overcharges to Plaintiffs and the Statewide Damages Class. Under the circumstances, it would be inequitable and unjust for Defendants to retain such benefits.

**FLORIDA**

245.     Defendants unlawfully overcharged Plaintiffs and members of the Class, who made purchases of or reimbursements for PVC Pipe in Florida at prices that were more than they would have been but for Defendants' actions. Plaintiffs and the Statewide Damages Class have conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of Plaintiffs and the Statewide Damages Class. Defendants appreciated the benefits bestowed upon them by Plaintiffs and the Statewide Damages Class. Under the

circumstances, it would be inequitable for Defendants to retain such benefits without compensating Plaintiffs and the Statewide Damages Class.

**GEORGIA**

246.    Defendants unlawfully overcharged Plaintiffs and members of the Class, who made purchases of or reimbursements for PVC Pipe in Georgia at prices that were more than they would have been but for Defendants' actions. Plaintiffs and the Statewide Damages Class have conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of Plaintiffs and the Statewide Damages Class. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating Plaintiffs and the Statewide Damages Class.

**HAWAII**

247.    Defendants unlawfully overcharged Plaintiffs and members of the Class, who made purchases of or reimbursements for PVC Pipe in Hawaii at prices that were more than they would have been but for Defendants' actions. Plaintiffs and the Statewide Damages Class have conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of Plaintiffs and the Statewide Damages Class. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating Plaintiffs and the Statewide Damages Class.

**IDAHO**

248.    Defendants unlawfully overcharged Plaintiffs and members of the Class, who made purchases of or reimbursements for PVC Pipe in Idaho at prices that were more than they would have been but for Defendants' actions. Plaintiffs and the Statewide Damages Class have conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges

to the economic detriment of Plaintiffs and the Statewide Damages Class. Defendants appreciated the benefit conferred upon them by Plaintiffs and the Statewide Damages Class. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating Plaintiffs and the Statewide Damages Class.

**ILLINOIS**

249. Defendants unlawfully overcharged Plaintiffs and members of the Class, who made purchases of or reimbursements for PVC Pipe in Illinois at prices that were more than they would have been but for Defendants' actions. Plaintiffs and the Statewide Damages Class have conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of Plaintiffs and the Statewide Damages Class. Defendants retained the benefits bestowed upon them under unjust circumstances arising from unlawful overcharges to Plaintiffs and the Statewide Damages Class. It is against equity, justice, and good conscience for Defendants to be permitted to retain the revenue resulting from their unlawful overcharges.

**IOWA**

250. Defendants unlawfully overcharged Plaintiffs and members of the Class, who made purchases of or reimbursements for PVC Pipe in Iowa at prices that were more than they would have been but for Defendants' actions. Defendants have been enriched by revenue resulting from unlawful overcharges for PVC Pipes, which revenue resulted from anticompetitive prices paid by Plaintiffs and the Statewide Damages Class, which inured to Defendants' benefit. Defendants' enrichment has occurred at the expense of Plaintiffs and the Statewide Damages Class. Under the circumstances, it would be unjust for Defendants to retain such benefits without compensating Plaintiffs and the Statewide Damages Class.

**KANSAS**

251.     Defendants unlawfully overcharged Plaintiffs and members of the Class, who made purchases of or reimbursements for PVC Pipe in Kansas at prices that were more than they would have been but for Defendants' actions.  Plaintiffs and the Statewide Damages Class have conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of Plaintiffs and the Statewide Damages Class.  Defendants retained the benefits bestowed upon them under unjust circumstances arising from unlawful overcharges to Plaintiffs and the Statewide Damages Class.  Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating Plaintiffs and the Statewide Damages Class.

**KENTUCKY**

252.     Defendants unlawfully overcharged Plaintiffs and members of the Class, who made purchases of or reimbursements for PVC Pipe in Kentucky at prices that were more than they would have been but for Defendants' actions.  Plaintiffs and the Statewide Damages Class have conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of Plaintiffs and the Statewide Damages Class.  Defendants appreciated the benefit conferred upon them by Plaintiffs and the Statewide Damages Class.  Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating Plaintiffs and the Statewide Damages Class.

**LOUISIANA**

253.     Defendants unlawfully overcharged Plaintiffs and members of the Class, who made purchases of or reimbursements for PVC Pipe in Louisiana at prices that were more than they would have been but for Defendants' actions.  Defendants have been enriched by revenue resulting from

unlawful overcharges for PVC Pipes. Plaintiffs and the Statewide Damages Class have been impoverished by the overcharges for PVC Pipe resulting from Defendants' unlawful conduct. Defendants' enrichment and Plaintiffs' and the Statewide Damages Class's impoverishment are connected. There is no justification for Defendants' receipt of the benefits causing their enrichment because Plaintiffs and the Statewide Damages Class paid supracompetitive prices that inured to Defendants' benefit, and it would be inequitable for Defendants to retain any revenue gained from their unlawful overcharges. Plaintiffs and the Statewide Damages Class have no other remedy at law.

**MAINE**

254.   Defendants unlawfully overcharged Plaintiffs and members of the Class, who made purchases of or reimbursements for PVC Pipe in Maine at prices that were more than they would have been but for Defendants' actions. Plaintiffs and the Statewide Damages Class have conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of Plaintiffs and the Statewide Damages Class. Defendants were aware of or appreciated the benefit bestowed upon them by Plaintiffs and the Statewide Damages Class. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating Plaintiffs and the Statewide Damages Class.

**MARYLAND**

255.   Defendants unlawfully overcharged Plaintiffs and members of the Class, who made purchases  of  or reimbursements for PVC Pipe in Maryland at prices that were more than they would have been but for Defendants' actions. Plaintiffs and the Statewide Damages Class have conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of Plaintiffs and the Statewide Damages Class. Defendants

were aware of or appreciated the benefit bestowed upon them by Plaintiffs and the Statewide Damages Class. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating Plaintiffs and the Statewide Damages Class.

**MASSACHUSETTS**

256.     Defendants unlawfully overcharged Plaintiffs and members of the Class, who made purchases of or reimbursements for PVC Pipe in Massachusetts at prices that were more than they would have been but for Defendants' actions. Plaintiffs and the Statewide Damages Class have conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of Plaintiffs and the Statewide Damages Class. Defendants were aware of or appreciated the benefit conferred upon them by Plaintiffs and the Statewide Damages Class. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating Plaintiffs and the Statewide Damages Class.

**MICHIGAN**

257.     Defendants unlawfully overcharged Plaintiffs and members of the Class, who made purchases of or reimbursements for PVC Pipe in Michigan at prices that were more than they would have been but for Defendants' actions. Defendants have received a benefit from Plaintiffs and the Statewide Damages Class in the nature of revenue resulting from the unlawful overcharges, which revenue resulted from anticompetitive prices that inured to the benefit of Defendants. Defendants retained the benefits bestowed upon them under unjust circumstances arising from unlawful overcharges to Plaintiffs and the Statewide Damages Class. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating Plaintiffs and the Statewide Damages Class.

**MINNESOTA**

258.    Defendants unlawfully overcharged Plaintiffs and members of the Class, who made purchases of or reimbursements for PVC Pipe in Minnesota at prices that were more than they would have been but for Defendants' actions.  Plaintiffs and the Statewide Damages Class have conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of Plaintiffs and the Statewide Damages Class.  Defendants appreciated and knowingly accepted the benefits bestowed upon them by Plaintiffs and the Statewide Damages Class.  Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating Plaintiffs and the Statewide Damages Class.

**MISSISSIPPI**

259.    Defendants unlawfully overcharged Plaintiffs and members of the Class, who made purchases of or reimbursements for PVC Pipe in Mississippi at prices that were more than they would have been but for Defendants' actions.  Defendants received money from Plaintiffs and the Statewide Damages Class as a direct result of the unlawful overcharges.  Defendants retain the benefit of overcharges received on the sales of PVC Pipes, which in equity and good conscience belong to Plaintiffs and the Statewide Damages Class on account of Defendants' anticompetitive conduct.  Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating Plaintiffs and the Statewide Damages Class.

**MISSOURI**

260.    Defendants unlawfully overcharged Plaintiffs and members of the Class, who made purchases of or reimbursements for PVC Pipe in Missouri at prices that were more than they would have been but for Defendants' actions.  Plaintiffs and the Statewide Damages Class have conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful

overcharges to the economic detriment of Plaintiffs and the Statewide Damages Class. Defendants appreciated the benefit bestowed upon them by Plaintiffs and the Statewide Damages Class. Defendants accepted and retained the benefit bestowed upon them under inequitable and unjust circumstances arising from unlawful overcharges to Plaintiffs and the Statewide Damages Class.

**MONTANA**

261.    Defendants unlawfully overcharged Plaintiffs and members of the Class, who made purchases of or reimbursements for PVC Pipe in Montana at prices that were more than they would have been but for Defendants' actions. Plaintiffs and the Statewide Damages Class have conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of Plaintiffs and the Statewide Damages Class. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating Plaintiffs and the Statewide Damages Class.

**NEBRASKA**

262.    Defendants unlawfully overcharged Plaintiffs and members of the Class, who made purchases of or reimbursements for PVC Pipe in Nebraska at prices that were more than they would have been but for Defendants' actions. Defendants received money from Plaintiffs and the Statewide Damages Class as a direct result of the unlawful overcharges, and have retained this money. Defendants have paid no consideration to any other person in exchange for this money. In justice and fairness, Defendants should disgorge such money and remit the overcharged payments back to Plaintiffs and the Statewide Damages Class.

**NEVADA**

263.    Defendants unlawfully overcharged Plaintiffs and members of the Class, who made purchases of or reimbursements for PVC Pipe in Nevada at prices that were more than they would

have been but for Defendants' actions. Plaintiffs and the Statewide Damages Class have conferred an economic benefit upon Defendants in the nature of revenue resulting from unlawful overcharges for PVC Pipes. Defendants appreciated the benefits bestowed upon them by Plaintiffs and the Statewide Damages Class, for which they have paid no consideration to any other person. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating Plaintiffs and the Statewide Damages Class.

**NEW HAMPSHIRE**

264.    Defendants unlawfully overcharged Plaintiffs and members of the Class, who made purchases of or reimbursements for PVC Pipe in New Hampshire at prices that were more than they would have been but for Defendants' actions. Defendants have received a benefit from Plaintiffs and the Statewide Damages Class in the nature of revenue resulting from the unlawful overcharges, which revenue resulted from anticompetitive prices that inured to the benefit of Defendants. Under the circumstances, it would be unconscionable for Defendants to retain such benefits.

**NEW JERSEY**

265.    Defendants unlawfully overcharged Plaintiffs and members of the Class, who made purchases of or reimbursements for PVC Pipe in New Jersey at prices that were more than they would have been but for Defendants' actions. Defendants have received a benefit from Plaintiffs and the Statewide Damages Class in the nature of revenue resulting from the unlawful overcharges, which revenue resulted from anticompetitive prices that inured to the benefit of Defendants. The benefits conferred upon Defendants were not gratuitous, in that they comprised revenue created by unlawful overcharges arising from arising from unlawful overcharges to Plaintiffs and the Statewide Damages Class. Defendants have paid no consideration to any other person for any of the unlawful benefits they received from Plaintiffs and the Statewide Damages Class with respect

to Defendants' sales of PVC Pipes.  Under the circumstances, it would be unjust for Defendants to retain such benefits without compensating Plaintiffs and the Statewide Damages Class.

### NEW MEXICO

266.    Defendants unlawfully overcharged Plaintiffs and members of the Class, who made purchases of or reimbursements for PVC Pipe in New Mexico at prices that were more than they would have been but for Defendants' actions.  Defendants have knowingly benefited at the expense of Plaintiffs and the Statewide Damages Class from revenue resulting from unlawful overcharges for PVC Pipes.  To allow Defendants to retain the benefits would be unjust because the benefits resulted from anticompetitive pricing that inured to Defendants' benefit and because Defendants have paid no consideration to any other person for any of the benefits they received.

### NEW YORK

267.    Defendants unlawfully overcharged Plaintiffs and members of the Class, who made purchases of or reimbursements for PVC Pipe in New York at prices that were more than they would have been but for Defendants' actions.  Defendants have been enriched by revenue resulting from unlawful overcharges for PVC Pipes, which revenue resulted from anticompetitive prices paid by Plaintiffs and the Statewide Damages Class, which inured to Defendants' benefit.  Defendants' enrichment has occurred at the expense of Plaintiffs and the Statewide Damages Class.  It is against equity and good conscience for Defendants to be permitted to retain the revenue resulting from their unlawful overcharges.

### NORTH CAROLINA

268.    Defendants unlawfully overcharged Plaintiffs and members of the Class, who made purchases of or reimbursements for PVC Pipe in North Carolina at prices that were more than they would have been but for Defendants' actions.  Plaintiffs and the Statewide Damages Class have

conferred an economic benefit upon Defendants in the nature of revenue resulting from unlawful overcharges to the economic detriment of Plaintiffs and the Statewide Damages Class. Plaintiffs and the Statewide Damages Class did not interfere with Defendants' affairs in any manner that conferred these benefits upon Defendants. The benefits conferred upon Defendants were not gratuitous, in that they comprised revenue created by unlawful overcharges arising from arising from unlawful overcharges to Plaintiffs and the Statewide Damages Class. The benefits conferred upon Defendants are measurable, in that the revenue Defendants have earned due to unlawful overcharges is ascertainable by review of sales records. Defendants consciously accepted the benefits conferred upon them.

**NORTH DAKOTA**

269.    Defendants unlawfully overcharged Plaintiffs and members of the Class, who made purchases of or reimbursements for PVC Pipe in North Dakota at prices that were more than they would have been but for Defendants' actions. Defendants have been enriched by revenue resulting from unlawful overcharges for PVC Pipes. Plaintiffs and the Statewide Damages Class have been impoverished by the overcharges for PVC Pipe resulting from Defendants' unlawful conduct. Defendants' enrichment and Plaintiffs' and the Statewide Damages Class's impoverishment are connected. There is no justification for Defendants' receipt of the benefits causing their enrichment because Plaintiffs and the Statewide Damages Class paid supracompetitive prices that inured to Defendants' benefit, and it would be inequitable for Defendants to retain any revenue gained from their unlawful overcharges. Plaintiffs and the Statewide Damages Class have no remedy at law. Under the circumstances, it would be unjust for Defendants to retain such benefits without compensating Plaintiffs and the Statewide Damages Class.

**OKLAHOMA**

270.     Defendants unlawfully overcharged Plaintiffs and members of the Class, who made purchases of or reimbursements for PVC Pipe in Oklahoma at prices that were more than they would have been but for Defendants' actions.  Defendants received money from Plaintiffs and the Statewide Damages Class as a direct result of the unlawful overcharges, and have retained this money. Defendants have paid no consideration to any other person in exchange for this money.   Plaintiffs and the Statewide Damages Class have no remedy at law.   It is against equity and good conscience for Defendants to be permitted to retain the revenue resulting from their unlawful overcharges.

**OREGON**

271.     Defendants unlawfully overcharged Plaintiffs and members of the Class, who made purchases of or reimbursements for PVC Pipe in Oregon at prices that were more than they would have been but for Defendants' actions.  Plaintiffs and the Statewide Damages Class have conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of Plaintiffs and the Statewide Damages Class.  Defendants were aware of the benefit bestowed upon them by Plaintiffs and the Statewide Damages Class.  Under the circumstances, it would be unjust for Defendants to retain such benefits without compensating Plaintiffs and the Statewide Damages Class.

**PENNSYLVANIA**

272.     Defendants unlawfully overcharged Plaintiffs and members of the Class, who made purchases of or reimbursements for PVC Pipe in Pennsylvania at prices that were more than they would have been but for Defendants' actions. Plaintiffs and the Statewide Damages Class have conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of Plaintiffs and the Statewide Damages Class.  Defendants

appreciated the benefit bestowed upon them by Plaintiffs and the Statewide Damages Class. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating Plaintiffs and the Statewide Damages Class.

**RHODE ISLAND**

273. Defendants unlawfully overcharged Plaintiffs and members of the Class, who made purchases of or reimbursements for PVC Pipe in Rhode Island at prices that were more than they would have been but for Defendants' actions. Plaintiffs and the Statewide Damages Class have conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of Plaintiffs and the Statewide Damages Class. Defendants appreciated the benefit bestowed upon them by Plaintiffs and the Statewide Damages Class. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating Plaintiffs and the Statewide Damages Class.

**SOUTH CAROLINA**

274. Defendants unlawfully overcharged Plaintiffs and members of the Class, who made purchases of or reimbursements for PVC Pipe in South Carolina at prices that were more than they would have been but for Defendants' actions. The benefits conferred upon Defendants were not gratuitous, in that they comprised revenue created by unlawful overcharges arising from arising from unlawful overcharges to Plaintiffs and the Statewide Damages Class. Defendants realized value from the benefit bestowed upon them by Plaintiffs and the Statewide Damages Class. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating Plaintiffs and the Statewide Damages Class.

**SOUTH DAKOTA**

275.    Defendants unlawfully overcharged Plaintiffs and members of the Class, who made purchases of or reimbursements for PVC Pipe in South Dakota at prices that were more than they would have been but for Defendants' actions.  Defendants have received a benefit from Plaintiffs and the Statewide Damages Class in the nature of revenue resulting from the unlawful overcharges, which revenue resulted from anticompetitive prices that inured to the benefit of Defendants. Defendants were aware of the benefit bestowed upon them by Plaintiffs and the Statewide Damages Class.  Under the circumstances, it would be inequitable and unjust for Defendants to retain such benefits without reimbursing Plaintiffs and the Statewide Damages Class.

**TENNESSEE**

276.    Defendants unlawfully overcharged Plaintiffs and members of the Class, who made purchases  of  or reimbursements for PVC Pipe in Tennessee at prices that were more than they would have been but for Defendants' actions.  Plaintiffs and the Statewide Damages Class have conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of Plaintiffs and the Statewide Damages Class.  Defendants appreciated the benefit bestowed upon them by Plaintiffs and the Statewide Damages Class.  Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating Plaintiffs and the Statewide Damages Class.  It would be futile for Plaintiffs and the Statewide Damages Class to seek a remedy from any party with whom they have privity of contract. Defendants have paid no consideration to any other person for any of the unlawful benefits they received indirectly from Plaintiffs and the Statewide Damages Class with respect to Defendants' sales of PVC Pipes.  It would be futile for Plaintiffs and the Statewide Damages Class to exhaust all remedies against the entities with which Plaintiffs and the Statewide Damages Class have privity of

contract because Plaintiffs and the Statewide Damages Class did not purchase PVC Pipe directly from any Defendant.

**TEXAS**

277. Defendants unlawfully overcharged Plaintiffs and members of the Class, who made purchases of or reimbursements for PVC Pipe in Texas at prices that were more than they would have been but for Defendants' actions. Defendants have received a benefit from Plaintiffs and the Statewide Damages Class in the nature of revenue resulting from the unlawful overcharges, which revenue resulted from anticompetitive prices that inured to the benefit of Defendants. Defendants were aware of or appreciated the benefit bestowed upon them by Plaintiffs and the Statewide Damages Class. The circumstances under which Defendants have retained the benefits bestowed upon them by Plaintiffs and the Statewide Damages Class are inequitable in that they result from Defendants' unlawful overcharges for PVC Pipes. Plaintiffs and the Statewide Damages Class have no remedy at law.

**UTAH**

278. Defendants unlawfully overcharged Plaintiffs and members of the Class, who made purchases of or reimbursements for PVC Pipe in Utah at prices that were more than they would have been but for Defendants' actions. Plaintiffs and the Statewide Damages Class have conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of Plaintiffs and the Statewide Damages Class. Defendants were aware of or appreciated the benefit bestowed upon them by Plaintiffs and the Statewide Damages Class. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating Plaintiffs and the Statewide Damages Class.

**VERMONT**

279.     Defendants unlawfully overcharged Plaintiffs and members of the Class, who made purchases of or reimbursements for PVC Pipe in Vermont at prices that were more than they would have been but for Defendants' actions.  Plaintiffs and the Statewide Damages Class have conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of Plaintiffs and the Statewide Damages Class.  Defendants accepted the benefit bestowed upon them by Plaintiffs and the Statewide Damages Class.  Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating Plaintiffs and the Statewide Damages Class.

**VIRGINIA**

280.     Defendants unlawfully overcharged Plaintiffs and members of the Class, who made purchases of or reimbursements for PVC Pipe in Virginia at prices that were more than they would have been but for Defendants' actions.  Plaintiffs and the Statewide Damages Class have conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of Plaintiffs and the Statewide Damages Class.  Defendants were aware of the benefit bestowed upon them.  Defendants should reasonably have expected to repay Plaintiffs and the Statewide Damages Class. The benefits conferred upon Defendants were not gratuitous, in that they constituted revenue created by unlawful overcharges arising from Defendants' illegal and unfair actions to inflate the prices of PVC Pipes.  Defendants have paid no consideration to any other person for any of the benefits they have received from Plaintiffs and the Statewide Damages Class.

**WASHINGTON**

281.     Defendants unlawfully overcharged Plaintiffs and members of the Class, who made purchases of or reimbursements for PVC Pipe in Washington at prices that were more than they would have been but for Defendants' actions.  Plaintiffs and the Statewide Damages Class have conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of Plaintiffs and the Statewide Damages Class.  Defendants were aware of or appreciated the benefit conferred upon them by Plaintiffs and the Statewide Damages Class.  Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating Plaintiffs and the Statewide Damages Class.

**WEST VIRGINIA**

282.     Defendants unlawfully overcharged Plaintiffs and members of the Class, who made purchases of or reimbursements for PVC Pipe in West Virginia at prices that were more than they would have been but for Defendants' actions.  Plaintiffs and the Statewide Damages Class have conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of Plaintiffs and the Statewide Damages Class.  Defendants were aware of or appreciated the benefit bestowed upon them by Plaintiffs and the Statewide Damages Class. Under the circumstances, it would be inequitable for Defendants to retain such  benefits  without compensating Plaintiffs and the Statewide Damages Class.

**WISCONSIN**

283.     Defendants unlawfully overcharged Plaintiffs and members of the Class, who made purchases of or reimbursements for PVC Pipe in Wisconsin at prices that were more than they would have been but for Defendants' actions.  Plaintiffs and the Statewide Damages Class have conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges

to the economic detriment of Plaintiffs and the Statewide Damages Class. Defendants appreciated the benefit bestowed upon them by Plaintiffs and the Statewide Damages Class. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating Plaintiffs and the Statewide Damages Class.

**WYOMING**

284.     Defendants unlawfully overcharged Plaintiffs and members of the Class, who made purchases of or reimbursements for PVC Pipe in Wyoming at prices that were more than they would have been but for Defendants' actions. Plaintiffs and the Statewide Damages Class have conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of Plaintiffs and the Statewide Damages Class. Defendants accepted, used, and enjoyed the benefits bestowed upon them by Plaintiffs and the Statewide Damages Class. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating Plaintiffs and the Statewide Damages Class.

## XII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the Classes of all others so similarly situated, respectfully requests that the Court:

a.  Determine that this action may be maintained as a class action under Fed. R. Civ. P. 23(a) and (b)(3), appoint Plaintiffs as Class Representatives and their counsel of record as Class Counsel;

b.  Adjudge and decree that the acts of Defendants are illegal and unlawful, and are a *per se* violation (or alternatively illegal as a quick look or full-fledged rule of reason violation) of various state antitrust and competition laws as alleged above;

c.  Permanently enjoin and restrain Defendants, their affiliates, successors, transferees, assignees, and other officers, directors, agents, and employees thereof, and all other persons acting or claiming to act on their behalf, from in any manner continuing, maintaining, or renewing the conduct, contract, conspiracy, or combination alleged herein, or from entering into any other contract, conspiracy, or combination having a similar purpose or effect, and from

adopting or following any practice, plan, program, or device having a similar purpose or effect;

d.   Enter judgment against Defendants, jointly and severally, and in favor of Plaintiffs and members of the Classes for treble the amount of damages sustained by Plaintiffs and the Classes as allowed by law, together with costs of the action, including reasonable attorneys' fees, pre- and post-judgment interest at the highest legal rate from and after the date of service of this Complaint to the extent provided by law; and

e.   Award Plaintiffs and members of the Classes such other and further relief as the case may require and the Court may deem just and proper under the circumstances.

### XIII.   JURY TRIAL DEMANDED

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of all the claims asserted in this Complaint so triable.

Dated: December 20, 2024

Respectfully submitted,

*/s/ Elizabeth A. Fegan*
Elizabeth A. Fegan
Kyle Jacobsen (to be admitted *pro hac vice*)
**FEGAN SCOTT LLC**
150 S. Wacker Dr., Suite 2400
Chicago, Illinois 60606
Telephone: (312) 741-1019
Facsimile: (312) 264-0100
beth@feganscott.com
kyle@feganscott.com

Frederick S. Longer (to be admitted *pro hac vice*)
Keith J. Verrier (to be admitted *pro hac vice*)
Austin B. Cohen (to be admitted *pro hac vice*)
**LEVIN, SEDRAN & BERMAN LLP**
510 Walnut St # 500
Philadelphia, PA 19106
Telephone: (877) 882-1011
flonger@lfsblaw.com
kverrier@lfsblaw.com
acohen@lfsblaw.com

Michael A. London (to be admitted *pro hac vice*)
Tate J. Kunkle (to be admitted *pro hac vice*)
**DOUGLAS AND LONDON, P.C.**
59 Maiden Lane, 6th Floor
New York, NY 10038
Telephone: 212-566-7500
Facsimile:  212-566-7501
mlondon@douglasandlondon.com
tkunkle@douglasandlondon.com

J. Barton Goplerud (to be admitted *pro hac vice*)
**SHINDLER, ANDERSON, GOPLERUD & WEESE P.C.**
5015 Grand Ridge Dr., Suite 100
West Des Moines, IA 50265
goplerud@sagwlaw.com

Christopher T. Micheletti (to be admitted *pro hac vice*)
Qianwei Fu (to be admitted *pro hac vice*)
**ZELLE LLP**
555 12th Street, Suite 1230
Oakland, CA 94607
Telephone: (415) 693-0700
cmicheletti@zellelaw.com
qfu@zellelaw.com

Mark K. Wasvary (to be admitted *pro hac vice*)
**MARK K. WASVARY, P.C.**
2401 W. Big Beaver Rd., Ste. 100
Troy, MI 48084
Telephone: (248) 649-5667
Facsimile: (248) 731-7313

Michael J. Flannery (to be admitted *pro hac vice*)
**CUNEO GILBERT & LaDUCA, LLP**
Two CityPlace Drive
St. Louis, MO 63141
Telephone: (314) 226-1015
Facsimile: (202) 789-1813
mflannery@cuneolaw.com

Brendan S. Thompson (to be admitted *pro hac vice*)
Evelyn Riley (to be admitted *pro hac vice*)
**CUNEO GILBERT & LaDUCA, LLP**
2445 M Street, N.W., Suite 740
Washington, D.C. 20037
Telephone: (202) 789-3960
Facsimile: (202) 789-1813
brendant@cuneolaw.com
evelyn@cuneolaw.com

***Counsel for Plaintiffs and the Proposed End-User Classes***